*EXHIBIT D*

FILED
LODGED
RECEIVED

MAIL

MAR 27 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY



Asian Domain Name Dispute Resolution

**ADNDRC** beijing

# ADMINISTRATIVE PANEL DECISION
## Case No. CN-1801135

**Complainant: Evergrande Realestate Group Co., Ltd.**
**Respondent: Central America Domain Authority Ltd.**
**Domain Name: evergranderealestate.com**
**Registrar: Epik, Inc.**

## 1. Procedural History

On 25 January 2018, the Complainant submitted a Complaint in English to the Beijing Office of the Asian Domain Name Dispute Resolution Center (the ADNDRC Beijing Office) and elected this case to be dealt with by a one-person panel, in accordance with the Uniform Domain Name Dispute Resolution Policy (the Policy) and the Rules for Uniform Domain Name Dispute Resolution Policy (the Rules) approved by the Internet Corporation for Assigned Names and Numbers (ICANN), and the ADNDRC Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the ADNDRC Supplemental Rules) approved by the ADNDRC.

On 25 January 2018, the ADNDRC Beijing Office sent to the Complainant by email an acknowledgement of the receipt of the Complaint and transmitted by email to ICANN and the Registrar, Epik, Inc., a request for registrar verification in connection with the disputed domain name.

On 1 February 2018, the Registrar transmitted by email to the ADNDRC Beijing Office its verification response, confirming that the Respondent is listed as the registrant and providing the contact details.

On 1 February 2018, the ADNDRC notified the Complainant that the Complaint has been confirmed and transmitted to the Respondent and the case officially commenced. On the same day, the ADNDRC Beijing Office transmitted the Written Notice of the Complaint to the Respondent, which informed that the Complainant had filed a Complaint against the disputed domain name and the ADNDRC Beijing Office had sent the Complaint and its attachments through email according to the Rules and the Supplemental Rules. On the same day, the ADNDRC Beijing Office notified ICANN and registrar, Epik, Inc, of the commencement of the proceedings.

The Respondent submitted a Response to the ADNDRC Beijing Office on 18 February 2018. The ADNDRC Beijing Office transmitted the Response to the Complainant on the same day.

Having received a Declaration of Impartiality and Independence and a Statement of Acceptance from Ms. Xue Hong, the ADNDRC Beijing Office notified the parties on 22 February 2018 that the Panel in this case had been selected, with Ms. Xue Hong acting as the sole panelist. The Panel determines that the appointment was made in accordance with Paragraph 6 of the Rules and Articles 8 and 9 of the Supplemental Rules.

On 22 February 2018, the Panel received the file from the ADNDRC Beijing Office and should render the Decision within 14 days, i.e., on or before 8 March 2018.

Pursuant to Paragraph 11 (a) of the Rules, unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the administrative proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding. The language of the current disputed domain name Registration Agreement is English. thus the Panel determines English as the language of the proceedings.


## 2. Factual Background

### A. The Complainant

The Complainant in this case is Evergrande Realestate Group Co., Ltd. The registered address is Excellence Houhai Financial Center, No.1126, Haide Third Road, Nanshan District, Shenzhen City, China. The authorized representative in this case is Chofn Intellectual Property Agency Co. Ltd.

### B. The Respondent

The Respondent in this case is Central America Domain Authority Ltd. The registered address is Suite N-47, Airport X Managua Hotel and Business Center, Residencial Montecristi, Managua, Nicaragua. The authorized representative in this case is Karla Corea, Attorney at Law.

The Respondent is the current registrant of the disputed domain name "evergranderealestate.com", which was registered on 15 October 2017 according to the WHOIS information. The registrar of the disputed domain name is Epik, Inc.


## 3. Parties' Contentions

### A. The Complainant

i. The disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights

Founded in 1997, the Complainant is one of the world's top 500 enterprise groups. It is based on the real estate for people's wellbeing and is led by cultural tourism, with finance and health as two wings. It has formed the industrial structure of "real estate plus service".

From the latest search results dated on December 25, 2017, the Complainant has filed more than 3,150 trademark applications with CTMO. So far, over 2,400 trademarks were successfully registered, a large portion of which include the elements "evergrande" or "恒大".

Part of the registered trademarks listed as follows:

| No. | Trademark | Appl. Date | Reg. No. | Class |
|-----|-----------|-----------|----------|-------|
| 1 | EVERGRANDE | 2007-09-10 | 6269524 | 35 |
| 2 | EVERGRANDE | 2007-09-10 | 6269525 | 36 |
| 3 | EVERGRANDE | 2007-09-10 | 6269526 | 37 |
| 4 | EVERGRANDE | 2007-09-10 | 6269528 | 39 |
| 5 | EVERGRANDE | 2007-09-10 | 6269530 | 41 |
| 6 | EVERGRANDE | 2007-09-10 | 6269531 | 42 |
| 7 | EVERGRANDE | 2007-09-10 | 6269532 | 43 |
| 8 | EVERGRANDE | 2007-09-10 | 6269533 | 44 |
| 9 | EVERGRANDE | 2007-09-10 | 6269534 | 45 |

The disputed domain name was registered on October 15, 2017. Prior to the date in point, the Complainant has registered a great quantity of trademarks, including the marks with the elements of "evergrande""恒大".

Furthermore, "evergrande""恒大" have been viewed as the trade names of the Complainant. Founded in 1997, "evergrande" "恒大" have gained substantial public recognition and reputation. Due to the wide public awareness of "evergrande" "恒大", it is obvious that the Complainant has the prior Trade Name Rights concerning "evergrande".

The disputed domain name is "evergranderealestate.com", excluding the gTLD suffix ".com", and the remaining distinctive portion of the dispute d domain name is "evergranderealestate", consisting of "evergrande" and "realestate". "Evergrande", as one coined element, is being used for the purpose of the Complainant's prior trademark and trade name. With one additional generic term "realestate", which is evidently indicative and descriptive, "evergranderealestate" could not differ from "Evergrande" visually, aurally, conceptually in terms of the public opinion. As indicated above, "evergrande", per se, has been invented without any meaning and should be viewed inherently distinctive. With the co-existence of "evergranderealestate" and

3

"evergrande", it could mislead the public holding the view that "evergranderealestate" might be developed from "evergrande" or "evergranderealestate" and has the business connection, permission, authorization, and cooperation with "evergrande". As stated in part 7, it is obvious that the disputed domain name "evergranderealestate.com" could not make a slight difference conceptually, aurally, visually from those owned by the Complainant. Hence, the co-existence would lead the netizens to hold the wrong view that the disputed domain shared the same source with other registered domains by the Complainant.

Furthermore, real estate, is one of the core sections for the Complainant, if used with the combinations of the Complainant's trademark "evergrande" by the Respondent, it would lead the public to the wrong view that "evergranderealestate" is being developed and invented by the Complainant for strengthening and expanding the pointed business. In light of the above, "evergranderealestate" could be confusingly misleading to "evergrande".

To sum up, the Complainant has prior legitimate rights concerning the elements "evergrande" "恒大". The disputed domain name is confusingly similar to the prior trademarks and trade name of which the Complainant has rights.

ii. The Respondent has no rights or legitimate interests in respect of the domain name.

a. The Respondent has no trademark rights regarding the disputed domain name.

Referring to the CMTO's website (http://sbj.saic.gov.cn/), no search result could be revealed in the name of "Central American Domain Authority Ltd". Therefore, the Respondent has no any trademark record. Thus, there is no any trademark rights regarding "evergranderealestate". In addition, the Complainant has never authorized or licensed the Respondent to use the trademark "evergrande".

b. The Respondent has no other rights regarding the disputed domain name.

"Central American Domain Authority Ltd" as a company name, obviously, could not have trade name rights in terms of "evergrande".

To sum up, the Respondent has no trademark/trade name or any other legitimate rights in respect of the disputed domain name.

iii. The disputed domain name has been registered and is being used in bad faith

The disputed domain name has been registered in bad faith:

a. Prior to the application date of the disputed domain name, the Complainant had already possessed substantial reputation.

Founded in 1997, Evergrande has been one of the world's top 500 enterprise groups ever since 2016. The brand, "evergrande" "恒大", of which the complainant has acquired substantial goodwill and reputation, with the continuous and wide use ever

4

since the year of 1997. In 2016, "Evergrande", with more than 80,000 employees, had total assets of RMB 1.35 trillion, an annual sales scale of over RMB 400 billion (ranking firstly in the industry) and annual taxes of RMB 33.4 billion. In the present phrase, Evergrande owns over 700 projects in over 180 cities throughout China, with more than 20 regional companies in Guangdong, Beijing, Shanghai, Chongqing, etc. In July 2016, the company was named in "FORTUNE 500" list and became one of the largest real estate enterprises globally.

According to the Whois search result, the disputed domain name was registered on October 15, 2017. It can be seen from above, the Complainant has been using "evergrande" as trademarks for nearly 20 years. With the emerging success in business, "evergrande" turns out to be one household brand in China.

b. "evergrande" is one coined word being strongly distinctive and indicative.

"evergrande", as one coined element, has no meaning from any dictionary searching, forming by the portions "ever" and "grande". As a combination, the word shall be inherently distinctive.

Furthermore, "evergrande" is being used for the purpose of the Complainant's prior trademark and trade name. Searching the key words "evergrande" "恒大" by "Baidu" "Google", the first hit would definitely reveal the entity of the Complainant. This shows that, "evergrande" has a strong indication of the identity of the Complainant.

The Respondent could not possibly associate with "evergrande", the distinctive portion of the disputed domain name in any way if the conduct is not the pure imitation.

c. The disputed domain name has been registered in bad faith.

It should be noted that, the Complainant's mark "evergrande" has gained substantial reputation prior to the application date of the disputed domain name. Consequently, the Respondent should be aware of the fame of the Complainant and the prior rights thereof. Under the circumstance, the Respondent to some extent applied for the disputed domain name for some disguised purposes. In consideration of the fact that there is no relations (sponsorship, affiliation, licensing, etc.) between the Complainant and the Respondent, the mentioned action might otherwise mislead or purposely confuse certain public that there is mutual connection, both parties are somewhat associated, or the contested website is operated by the Complainant, etc. Hence, the disputed domain name has been registered in non bona fide.

In the present case, the disputed domain name "evergranderealestate.com" has fully covered the "evergrande", namely the well-known mark owned by the Complainant. Meanwhile, the remaining element "realestate" is descriptive and one generic term, being less distinctive. More importantly, "realestate" is the core section/business for the Complainant. Thus, the Respondent should be aware of the marks and the main business of the Complainant. Such conduct by the Respondent shall be viewed as

Below are the reasons why the above-mentioned circumstances could be applicable to the present case.

a. "evergrande" is one coined word with inherent distinctiveness. As the mark was born dating back to twenty years ago, after the long-lasting and worldwide use, it has been duly acquainted globally. Likewise, the consumers should be award of the mark "evergrande" prior to the application date of contested domain.

b. As "realestate" is the core section/business for the Complainant, the Respondent should be aware of the marks and the main business of the Complainant. Such conduct by the Respondent is one typical cybersquatting behavior with disguised purpose.

c. According to the Whois rearch results, the "Registrant Phone" of the disputed domain name is "+85281928125", one invalid number and never got through. Hence, the Respondent is concealing its identity or use of false contact information while registering the domain.

Defining one bad-faith behavior shall take actual situation into consideration. In this case, the Respondent has showed the bad faith even though the contested domain has never been put into actual use.

Nevertheless, if the disputed domain name is/will be used otherwise, the bad faith of the Respondent could also be claimed. According to the UDRP b(iv) :"by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location." In the present case, as the domain name is highly similar to the Complainant's marks of substantial reputation and worldwide use, evidently, the confusion is certain to be made under the circumstance. The above circumstance is applicable to the aforementioned UDRP b(iv) clause.

According to the "WIPO Jurisprudential Overview 3.0" 3.1.4: "Panels have consistently found that the mere registration of a domain name that is identical or confusingly similar (particularly domain names comprising typos or incorporating the mark plus a descriptive term) to a famous or widely-known trademark by an unaffiliated entity can by itself create a presumption of bad faith.". "Panels have moreover found the following types of evidence to support a finding that a respondent has registered a domain name to attract, for commercial gain, Internet users to its website by creating a likelihood of confusion with the complainant's mark: (iii) the lack of a respondent's own rights to or legitimate interests in a domain name." In this case, as the Complainant's marks is highly distinctive and share a high goodwill and reputation, the malice behavior shall be deemed/defined if there are no or NOT SUFFICIENT counter-evidences testifying otherwise. Considering the following facts that:

a. the Respondent consciously knew the existence of the Complainant and should be aware of its prior rights; and

b. the Respondent, Central American Domain Authority Ltd., is obviously "domain" related rather than "real estate" associated, and has no any relations with "evergrande".

The bad-faith of speculative malice is evidently satisfied and would be deemed the same by the Panel judging from the previously similar open cases. (1, Parfums Christian Dior v. Javier Garcia Quintas and Christiandior.net, Case No. D2000-0226; 2, Banca Sella s.p.a v. Mr. Paolo Parente, Case No. D2000-1157; 3, The Nasdaq Stock Market, Inc. v. Act One Internet Solutions, Case No. D2003-0103, etc.)

To sum up, the Respondent has shown the bad-faith from the domain registration and could be further concluded from the potential use thereof.

The Complainant requests that the disputed domain name be transferred to the Complainant.


## B. The Respondent

As to part 1 of the Complaint, the Respondent admits the name of the domain name in dispute.

As to part 2 of the Complaint, the Respondent admits the name of the Registrar.

As to part 3 of the Complaint, the Respondent denied the allegations therein. Specifically, the Complaint is not signed by a human, but by a "rubber stamp." The rubber stamp apparently belongs to a third-party Ziyuan Pu of the Beijing Chofn Intellectual Property Agency Co. Ltd. There is no information present that the Complainant, Evergrande Realestate Group Co. Ltd., authorized the Complaint or appointed Ziyuan Pu to lodge it on their behalf.

As to part 5 of the Complaint, most of the information is not relevant to the question. Therefore, the Respondent objects and requests to strike the extraneous data other than the first paragraph. Specifically, the form asks the Complainant to "Indicate the Reasons Why the Person/Entity Identified in the Complaint Has Been Identified as the Respondent." As to the first paragraph of part 5, we admit that Central America Domain Authority Ltd. is the Registrant of the domain name, and that it is the proper party. The extent the Centre seeks a response to the incorrectly included information, the Respondent denies the allegations in Part 5, paragraphs 2, 3,4,5,6, denies that the Beijing Chofn Intellectual Property Agency Co. Ltd. maintains knowledge of said facts.

As to Part 6 of the Complaint, the Respondent admits the allegations.

As to Part 7 of the Complaint state that Complainant maintains various trademarks. It does not allege any facts as to the Respondent. The Respondent is without

one of the typical cybersquatting behaviors with disguised purpose.

In above of this, the "evergranderealestate.com" case should be regarded as similarly and applicably to the aforementioned cases. Namely, "evergranderealestate.com" could lead to the dilution and tarnishment of the mark "evergrande". Hence, the disputed domain name has been registered in bad faith.

The disputed domain name is being used in bad faith:

It is well noted that, one well-known mark could bring itself more values than the marks of less fame. It leads to imitation on purpose or other pass-off behaviors. The above rule is applicable to domain names as well. Therefore, the domain names containing the part of well-known trademarks should have been deemed to be with higher value.

In the present case, the disputed domain name has not been put into actual use. After clicking into the URL: http://evergranderealestate.com/, the website page could show the following wording "THIS WEB PAGE IS PARKED FREE COURTESY OF EPIK.COM" and would indicate, the domain has been "parked free", and namely the same has not been presently used or properly used. Thus, the disputed domain name could expose the higher possibility to the presumption that the intention of the registration is for selling for the profits rather than bona-fide utilization.

According to the UDRP b(i): "circumstances indicating that you have registered or you have acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of your documented out-of-pocket costs directly related to the domain name." In this case, the Respondent apparently has no intention nor action to use the disputed domain name. In fact, the hidden purpose might be selling, renting, or transferring the disputed domain name to the Complainant or any other third part for profits. It is fully complying with the aforementioned UDRP b(i) clause.

Furthermore, according to the "WIPO Jurisprudential Overview 3.0", the "passive holding" usually shall be deemed as "bad faith" under several circumstances, supporting by many panelists. While panelists will look at the totality of the circumstances in each case, factors that have been considered relevant in applying the passive holding doctrine include: (i) the degree of distinctiveness or reputation of the complainant's mark, (ii) the failure of the respondent to submit a response or to provide any evidence of actual or contemplated good-faith use, (iii) the respondent's concealing its identity or use of false contact details (noted to be in breach of its registration agreement), and (iv) the implausibility of any good faith use to which the domain name may be put.

knowledge to admit or deny these allegations. However, the Respondent does object to the 140 pages of Exhibits attached to the Complaint as Annex 6.5 to prove these allegations. Specifically, 95% of these documents are written in the Chinese language, yet this action is proceeding in the English language. Therefore, the Complainant was and is obligated to provide English translates. The Respondent, and its counsel, have no knowledge of the Chinese language and the cost of obtaining a translation of these documents would be excessive and burdensome. Therefore, Respondent objects to the use of the Chinese-language exhibits and requests that the Centre strike said documents from the record.

By way of further answer, while the Respondent denies that Complainant maintains exclusive use of the term Evergrande as they insinuate, the Respondent admits that it registered the website evergranderealestate.com to write public interest articles and gather information about the alleged wrongdoing of the Complainant.

As to Part 8 of the Complaint, which may contain more than the authorized 3,000 words, and which is not in an itemized format, the Respondent will do their best to provide a concise and understandable admission or denial.

i. The Respondent admits that it registered the domain name on October 15, 2017. It also admits that it registered domains similar to many company names. However, these admissions are qualified by our response in Section 7, below.

The Respondent denies that the term "evergrande" is exclusively owned by the Complainant. Hundreds of companies have this term in their name. However, the Respondent admits that it registered the domain name to discuss in the public the activities of the Complainant and that the specific purpose of registering the name was to provide this public interest non-commercial discussion.

The Respondent admits that the domain name is "similar" to the Complainant's company name, but not that it is "confusingly similar" in a trademark type of discussion. The site was created to provide non-commercial public interest material about the Complainant and alleged wrongdoing as discussed in Section 7, below.

ii. The Respondent admits that it has no trademark rights to the domain name. However, this is qualified by the fact that the domain name was registered to provide non-commercial public interest investigative commentary about the Complainant and the alleged wrongdoing it purportedly engaged in.

The Respondent denied that it "has no other rights regarding the disputed domain name." The Respondent's rights are the fair use of the name for the intended non-commercial public interest discussions of the alleged wrongdoing by the Complainant.

The Respondent denies that its name, "Central America Domain Authority Ltd." has any relevance to the intended use of the domain name to provide non-commercial

public interest discussion material about the alleged wrongdoing of the Complainant.

iii. The Respondent denies that it registered the domain name in bad faith as alleged on Page 10 of the Complaint. As stated above and in Section 7 below, the purpose of the registration was to provide non-commercial public interest material about the Complainant.

The Respondent notes that "prior to the application date of the disputed domain name, the Complainant had already possessed substantial reputation", but that the reputation was a "bad reputation" which warranted a non-commercial public interest discussion site. As the rest of the material within section 1 and 2 is not entirely relevant to the crux of the Complaint, The Respondent does not comment further except to repeat its objections to exhibits and documents that are solely in the Chinese language without providing any interpretation.

As to the next section where Complainant alleges, "The disputed name has been registered in bad faith" on page 11, the Respondent denies the allegations in Section 3. While there is no "relations, sponsorship, affiliation, licensing, etc.", the content that is intended to be placed on the site is non-commercial public interest information. No consumer will be confused as the information will be about allegations of wrongdoing about the Complainant as more so described in paragraph 7, below.

As to page 11, section 3, paragraph 2, the Complainant cites various decisions; however, none of those decisions related to a situation where there was no commercial information of the site. It is true that the allegations against the Complainant may not be favorable for their reputation, it is a fair use to use their name when discussing them. All of the allegations are already public record, so there is no risk that the information will be used to tarnish their reputation in a "trademark" sense.

As to page 11-12, section 3, paragraphs 3 and 4, the Complainant discusses the term "real estate" and the potential dilution of their mark. However, the only way for consumers to find the non-commercial public interest commentary and discussion would be for the name and content of the site to be similar. That is, the information will be about the Complainant and is a fair use of the domain name.

iv. As to page 12, section 2, that claims the disputed domain name is being "used" in bad faith, the Respondent denies the allegation. The domain name does not yet contain the information and merely notes, "This website is not for sale. Informative information will be published soon. All information in the public interest."

As to page 12, section 2, paragraph 1, the Complainant discusses superior and inferior marks. As stated, the Respondent admits that it registered the domain to provide non-commercial public interest information and denies the other conclusions.

As to page 12, section 2, paragraph 2, the Respondent admits that it has not yet written the content of the website and it utilized a standard "parked page" from the

domain registrar. However, the Complainant fraudulently omits the language on the parked page which states, "This website is not for sale. Informative information will be published soon. All information in the public interest." That information was showing at the time that the Complainant accessed the page. The Respondent is not responsible for the content that the page is "parked free," but this is common when a domain name is registered. It does not indicate bad faith. On the contrary, the Respondent's notification that the website is not for sale, that it will be used for informative information in the public interest clearly shows that no bad faith occurred.

As to page 12, section 2, paragraph 3, the Respondent denies the insinuation that it intended to sell the domain name. On the contrary, the parked page clearly and unambiguously states that the domain is not for sale.

As to page 12, section 2, paragraph 4, the Respondent takes no position as to WIPO's elements of bad faith; however, the Respondent denies that these elements are applicable to the Respondent.

As to page 13, paragraph 2, numerals 1 and 2, the Respondent denies that the term Evergrande is solely owned by the Complainant as hundreds of companies have the word in their name; however, the Respondent admits that it registered the domain to provide a public interest discussion about the Complainant and its alleged wrongdoing.

As to page 13, paragraph 2, numeral 3, the Respondent denies that the telephone number is "invalid," but takes no positions as to whether the Complainant "got through" using it. The telephone number is a live and working number maintained for over four years. The Respondent is a corporation, duly registered in the United States. There is no "concealment" in this case.

As to page 13, paragraphs 3 and 4, the Respondent denies that its not putting the website to use evidences bad faith. The domain name was only registered four (4) months before this action was initiated. The Respondent readily admits that the website will contain information about the Complainant.

As to page 13, paragraph 5, the Respondent denies that it registered the website for commercial gain. There is no evidence of this. The parked page clearly states that the website is not for sale, that informative information is forthcoming, and that it will be in the public interest. There are no advertisements on the parked page.

As to page 14, paragraph 1, section 1, the Respondent admits it knew of the Complainant and that the content that will be placed on the site will be relevant to the alleged wrongdoing by the Complainant.

As to page 14, paragraph 1, section 2, the Respondent denies that its corporate name is relevant to the intended use of the domain. If, as the Complainant suggests, the Respondent was indeed a "real estate company," it would be complaining that its

competitor intended to use the domain to take its customers. In this case, the parked page explains the use of the domain name, to provide informative information, for the public interest.

As to Section 9 of the Complaint, the Respondent denies that the Complainant is entitled to have the domain name transferred to it.

As to Section 10 of the Complaint, the Respondent agrees that one panelist may hear this action.

As to Section 12 of the Complaint, the Complainant failed to make a choice as to a legal challenge, leaving the choice to the Respondent.

As to Section 13 of the Complaint, the Complainant did not indicate that it attached a copy. Therefore, this forum may be without jurisdiction.

As to Section 15 of the Complaint, the Complainant did not sign the Complaint. The Complaint is signed with a "rubber stamp." Based on information, the Complaint is rubber stamped by the Beijing Chofn Intellectual Property Agency Co. Ltd., Lawyer, not the Complainant. While it is proper to be represented by legal counsel, it does not appear proper for legal counsel to make statements of fact without said statements being signed by a person with knowledge. The Respondent also notes there is no evidence that the Beijing Chofn Intellectual Property Agency has a power of attorney and is authorized to submit the Complaint.

The Complainant's Complaint is unfounded and is an attempt to engage in reverse domain name hijacking because:

I. the Complainant contacted the Respondent and sought to purchase the domain name. The Complainant sent an email seeking to purchase the domain name.

II. The claim that the Respondent concealed its identity in the whois is misleading

The Respondent is incorporated within the United States. A valid email address was listed with the Registrar which enabled the Centre to serve the action. The Complainant's claims that the telephone number within the registration information is false and without any factual basis. The Skype-number has been assigned for several years.

III. The claim that the parked page implies a commercial intent is false

The parked page has been the same since the day of purchase. It states, "This website is not for sale. Informative information will be published soon. All information in the public interest." No advertising or commercial content is contained on the parked page that is attributable to the Respondent.

IV. The Respondent having a parked page for four months does not indicate bad faith

a. The Complainant's filings show the Respondent did not register the domain name

until mid-October 2017. The Complainant filed its Complaint February 2, 2018. Only a little more than four (4) months passed since the Responded parked the page with a notice that the website is not for sale and that informative information is forthcoming.

b. It would be unfair to make an adverse inference in this case as the page has not been parked for extended periods of time, the parked page is not a click-bait page that provides commissions, and the parked page clearly states that the domain is not for sale, and that informative information is coming soon that is in the public interest.

V. The non-commercial, planned fair use of the domains shows no bad faith occurred. The Respondent's other websites demonstrate what the content will be similar to.

The Respondent assists persons in Central America build websites. In the fourth quarter of 2017, it was approached by a journalist that wished to discuss corporate wrongdoing. The journalist contracted with the Respondent to create discussion forums and seek additional information as to certain claims. The journalist maintained a list of companies that he wished to write about.

The Respondent agreed to assist the journalist with the venture.

Section 4(c)(iii) of ICANN's rules explain that bad faith does not exist when, "the Respondent is making legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

The Respondent does not intent to mislead the public or divert customers or tarnish the service mark. Rather, the goal is to engage in public discussions about the controversies of the Complainant.

While the Complainant paints a rosy picture of its reputation, there exists discussions in the public that warrant a public interest discussion website relating to the Company. The Respondent intended to create such a forum to discuss allegations against the Complainant. This constitutes a fair use of the name.

Citron Research, an investment house, launched allegations of bribery and dodgy accounting. Citron Research called the Complainant "insolvent" and "fraudulent". This warrants a discussion by the public.

Evergrande responded by having charges brought in Hong Kong against Citron. This warrants a discussion by the public.

Reports indicate that "Chinese soccer team Guangzhou Evergrande, owned partially by Evergrand Real Estate are worth $3.35 billion, or roughly $500 million more than publicly traded Manchester United (which has a big float) and almost $100 million more than Real Madrid. Claims have been made that, "What the owners of Guangzhou Evergrande have done in essence is inflate the market value of their team by keeping the public float of its shares tiny." This warrants a public discussion.

There are debates by attorneys whether Evergrande's breaching advertising agreements is ethical. This warrants public discussion.

While negative, this planned commentary constitutes fair use of the domain name. See Bosley Medical v. Kremer, WIPO Case D2000-1647.

Our other domains provide examples of the non-commercial editorial content and the planned uses. As can be seen from the websites where editorial content has been created, the information is clearly not meant to create confusion.

VI. The centre should not make any assumptions based on the suggestions of the Complainant because it never contacted the Respondent to ask what the content would be.

The Complainant asks the Centre to make various assumptions as to what will eventually be on the website. It makes silly inferences such as the use of a "free" parked page means for-profit material will eventually be on the site. It asks that the lack of content be considered an assumption of bad faith.

On the contrary, the Complainant's legal counsel could have simply asked The Respondent by sending an email using real identifiers (not fake gmail accounts seeking to buy the domain). The Complainant would have received a response from the Respondent explaining that no commercial information would be on the site, that the site would contain open discussions about the company, that the site would clearly state that it is not affiliated with the Complainant, and that the Respondent would invite the Complainant to address the issues on the site and provide fair time for consumer complaints and concerns if it chose to proceed that way.

The failure of Complainant to mitigate or engage in this discussion shows the bad faith of the allegations and this Centre should not make any assumptions against the Respondent.

VII. The Complainant is attempting to reverse hijack the domain name to avoid public interest non-commercial journalistic expressions of information about them

The Complainant never contacted the Respondent to find out about the website or to determine what the intended uses would be.

The Complainant provided this Centre with misleading information asserting that the Respondent provided false information in the registration data (claiming a false phone number) when all information was up to date and accurate.

The Complainant deliberately omitted language when quoting the parked page. Complainant unfairly concealed the text stating that it was "not for sale" and that "informative information" that was "in the public interest" was forthcoming. Instead, it alleged and argued that the parked page meant the domain would be used to try to sell it to Complainant for profit or commercial purposes, knowing there was no basis

for such allegations.

The Complainant omitted and concealed that it sent the email at Exhibit R-1 to the Respondent to trick it and concealed that the Respondent never replied with any attempt to sell the domain name. These concealments occurred because The Respondent wished to, and did, falsely claim that inferences should be made that the website would be used to sell it back to them.

Reverse Domain Name Hijacking means using the UDRP in bad faith to attempt to deprive a registered domain-name holder of a domain name.

The Complainant in fact knew or clearly should have known at the time that it filed the complaint that it could not prove one of the essential elements required by the UDRP, to wit, that the domain was registered in bad faith. (This is why they concealed facts about the content of the parked page).

The Complainant knew that the Respondent's intended use was non-commercial speech and that it had no information that, the Respondent's use of a domain name could under any fair interpretation of the reasonably available facts, have constituted bad faith.

The Respondent requests the Panel to:

a. Strike all of the non-relevant allegations in Part 5 of the Complaint except for the First Paragraph as none of the information in Part 5, paragraphs 2,3,4,5,6 are relevant to "The Reasons Why the Person/Entity Identified in the Complaint Has Been Identified as the The Respondent."

b. Strike all of the documents contained in Annex 6.5 and the other Annexes to the Complaint which are written solely in the Chinese language) because no interpretations of said writings were provided.

c.   Dismiss the Complaint because the signatory on the Complaint is a rubber stamp, is not the Complainant, no certification of facts from the Complainant exists (on their alleged attorney), and no power of attorney is provided.

d. Deny the Complaint because the non-commercial content and intended use of the domain for non-commercial public interest discussions do not constitute "bad faith" and the Respondent's intent to create a public interest discussion forum constitutes "fair use."

e. Make a finding of an attempt at reverse domain name hijacking and bad faith filing against the Complainant.


**4. Procedural Matters**

**A. Language of Proceeding**

Pursuant to the Paragraph 11 (a) of the Rules, unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the administrative proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.

The language of the current disputed domain name Registration Agreement is English, the Panel therefore determines English be the language of the proceedings.

The Panel notes that the Respondent "objects to the use of the Chinese-language exhibits and requests that the Centre strike said documents from the record." The Respondent specifically requests that "all of the documents contained in Annex 6.5 and the other Annexes to the Complaint which are written solely in the Chinese language" be ignored.

Given that the Complainant submits the Complaint in English, it should have known that all the evidence submitted to the support the Complaint shall be in the same language. Since the Complainant chooses to submit the evidence that is not consistent with the langue of proceeding, it should have contemplated the consequence of such submissions.

According to the Rules, Paragraph 10 (c), the Panel shall ensure that the administrative proceeding takes place with due expedition. The Panel notes that any change of the language of the proceeding will inevitably prolong the proceeding.

Therefore, pursuant to the Paragraph 11 (b) of the Rules that ensures the Parties' equal treatment and effective participation in the proceeding, the Panel determines not to consider any Party's non-English submissions as the case materials.

**B. Complainant's Authorized Representative**

The Respondent contends that the Complainant, Evergrande Realestate Group Co. Ltd., does not authorize the Complaint because the Complaint is not signed by a human, but by a "rubber stamp", which apparently belongs to Ziyuan Pu of the Beijing Chofn Intellectual Property Agency Co. Ltd.

The Panel, however, notes that the Complainant does submit the valid Power of Attorney that is appropriately sealed by the Complainant. The Respondent's contention is untenable. Chofn Intellectual Property Agency Co. Ltd. is the Complainant's authorized representative in the proceeding.

**5. Discussions and Findings**

Paragraph 4(a) of the Policy provides that in order to be entitled to a transfer of the disputed domain name, the Complainant shall prove the following three elements:

(i) The disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights;

(ii) The registrant has no rights or legitimate interests in respect of the disputed domain name; and

(iii) The disputed domain name has been registered and is being used in bad faith.

Paragraph 4(b) of the Policy states that the following circumstances in particular, but without limitation, shall be evidence of registration and use of a domain name in bad faith:

(i) Circumstances indicating that the respondent has registered or acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of documented out-of-pocket costs directly related to the domain name; or

(ii) The respondent registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that the respondent has engaged in a pattern of such conduct; or

(iii) The respondent has registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) By using the domain name, the respondent has intentionally attempted to attract, for commercial gain, internet users to its website or other online location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of its website or location or of a product or service on its website or location.

### A. Identity or Confusing Similarity

Pursuant to the Policy, Paragraph 4(a)(i), a complainant must prove that a disputed domain name is identical or confusingly similar to a trademark or service mark in which the complainant has rights. In line with such requirement, a complainant must prove its trademark or service mark right and the identity or confusing similarity between the disputed domain name and its respective trademark or service mark.

Based on the trademark registration numbers submitted by the Complainant, the Panel confirms that the Complainant is the registrant of the "EVERGRANDE" marks in China.

The Panel notes that the disputed domain name "evergranderealestate.com" consists of "evergrande" and "realestate", before the generic Top Level Domain ("gTLD") ".com".

The Panel finds that the disputed domain name that incorporates the Complainant's registered marks EVERGRANDE in an entirety and adds the generic-term suffix "real estate" (as one word though) that directly refers to the Complainant's real estate business on which the marks EVERGRANDE is used is confusingly similar to the

Complainant's registered marks EVERGRANDE. Accordingly, the Complainant has proven the element required by the Paragraph 4(a)(i) of the Policy.

## B. Rights or Legitimate Interests of the Respondent

The Complainant asserts that the Respondent has neither rights nor legitimate interests to the disputed domain name and provides the evidence that the Respondent has no registered trademark regarding the disputed domain name in China.

The Respondent, however, contends that it has the right of "fair use of the name for the intended non-commercial public interest discussions of the alleged wrongdoing by the Complainant, although it has no trademark rights to the disputed domain name."

The Panel notes the following contents on the website of the disputed domain name, i.e. "This website is not for sale. Informative information will be published soon. All information in the public interest." the Respondent concedes that "it has not yet written the content of the website and it utilized a standard "parked page" from the domain registrar."

The Panel holds that the Respondent's right or legitimate interests to the disputed domain name may be found even without any pertinent trademark registration regarding the domain name, as far as any circumstance specified in the Paragraph 4 (c) of the Policy can be substantiated.

The Panel notes that the Respondent relies on the Paragraph 4(c)(iii) of the Policy to support its contention on the right and legitimate interest to the disputed domain name. In accordance with the Paragraph 4(c)(iii) of the Policy, where the Respondent is "making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue", its rights or legitimate interests to the domain name may be proved.

The Panel does looking into each expression used in the Paragraph 4(c)(iii) of the Policy and finds that it only refers to the legitimate noncommercial or fair use that has been occurring (e.g. C.S. Lewis (PTE.) Ltd. v. Richard Saville-Smith, WIPO Case No. D2008-0821). The "intended but not-yet-happening" use asserted by the Respondent is not within the scope of application of the Paragraph 4(c)(iii) of the Policy. On the current "parked page" resolving to the disputed domain name, the Panel cannot find any substantive contents to prove that the Respondent is making fair use or noncommercial use. Notwithstanding the news reports on the Complainant's business operations and the Respondent's assertion about potential cooperation with a journalist, neither can the Panel discover how the Respondent will make the demonstrable preparations for fair use, such as critical journalism through using the disputed domain name. The Respondent contends that its "other domains (www.eutelsatcommunications.com or http://tevapharmaceuticalinds.com/) provide

examples of the non-commercial editorial content and the planned uses". The Panel, however, finds that the Respondent's use of the other domain names is unpersuasive to prove its fair use with respect to the disputed domain name.

Based on the discoveries made above, the Panel finds that the Respondent's rights or legitimate interests to the disputed domain name is not found and the Complainant has proven the element required by the Paragraph 4(a)(ii) of the Policy.

### C. Bad Faith

The Complainant contends that the Respondent has the bad faith for passive holding of the Complainant's well-known mark. The Respondent denies that it registered the domain name in bad faith because the domain name does not yet contain the information and merely notes, "This website is not for sale. Informative information will be published soon. All information in the public interest."

The Panel notes that the Paragraph 4(b) of the Policy specifies four circumstances as the evidence of the Respondent's registration and use of a domain name in bad faith. The Panel, according to the Paragraph 15(a) of the Rules, assesses each circumstance based on both Parties' submissions.

The Panel notes that the Respondent makes the statement online that the website of the disputed domain name is "not for sale" and does not respond to an email query from <terroir.zhang@qq.com> dated on 6 December 2017 regarding buying the disputed domain name. The Complainant's assertion that "the disputed domain name could expose the higher possibility to the presumption that the intention of the registration is for selling for the profits rather than bona-fide utilization" is more arbitrary than convincing. Because of no evidence that the Respondent has ever attempted to sell or is selling the disputed domain name, the Paragraph 4(b)(i) of the Policy is not applicable in this regard.

The Panel notes that the Complainant does not submit any proof that the Respondent has engaged in a pattern of conduct of registering multiple domain names to prevent the owners of the marks from reflecting the marks in the correspondent domain names, although the Respondent concedes that it "registered domains similar to many company names". Based on the evidence received from the Parties, the Panel cannot find applicability of the Paragraph 4(b)(ii) of the Policy for the Complainant.

The Complainant concedes that the Respondent is not its business competitor because "the Respondent, Central American Domain Authority Ltd., is obviously 'domain' related rather than 'real estate' associated." Therefore, the Panel finds that the Paragraph 4(b)(iii) of the Policy cannot be applied to prove the Respondent's bad faith.

The Complainant contends that "the domain name is highly similar to the Complainant's marks of substantial reputation and worldwide use" and results in

confusion. The Panel, however, notes that the Paragraph 4(b)(iv) of the Policy refers to the Respondent's actual use of the disputed domain name for commercial gains. Since the Complainant contends that "the disputed domain name has not been put into actual use" and is passively held by the Respondent, the Panel finds Complainant's contention equivocal.

Based on the evidence received from the Parties, there is no pay-per-click links, commercial promotional information, mousetrapping setting or inappropriate contents on the website of the disputed domain name. The Panel, therefore, does not find the conclusive proofs that the disputed domain name has ever been or is being used for commercial gains by the Respondent, even though the Internet users may be initially attracted to the website of the disputed domain name that is confusingly similar to the Complainant's registered trademark. Notwithstanding the Complainant's contention regarding its marks' high distinctiveness and high reputation and Respondent's lack of rights or legitimate interests to the disputed domain name, the Complainant must bear the burden of proof that the Paragraph 4(b)(iv) of the Policy is fully applicable here. The Panel, however, finds that the Complainant fails to sufficiently prove its contention on the Respondent's bad faith under the Paragraph 4(b)(iv).

The Panel notes that the Paragraph 4(b) of the Policy permits the other unspecified circumstances to prove the Respondent's bad faith. In a few cases, the Panels have decided that the Respondent's passive holding of the disputed domain name in certain defined circumstances may be deemed the proof of bad faith. The Panel notes that the Complainant heavily relies on the World Intellectual Property Organization (WIPO) Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Jurisprudential Overview 3.0") to support its contention on the Respondent's bad faith for passive holding. Although the document composed by the WIPO is not binding in the proceeding, the Panel does not object to accept its value of reference.

According to the "WIPO Jurisprudential Overview 3.0", the Panel will look at the totality of the circumstances in each case and the factors that have been considered relevant in applying the passive holding doctrine include: (i) the degree of distinctiveness or reputation of the complainant's mark, (ii) the failure of the respondent to submit a response or to provide any evidence of actual or contemplated good-faith use, (iii) the respondent's concealing its identity or use of false contact details (noted to be in breach of its registration agreement), and (iv) the implausibility of any good faith use to which the domain name may be put.

The Panel has the interesting exercise to go through all the factors mentioned above. The distinctiveness of the Complainant's marks may be proved by its trademark registrations. Although the Complainant does not provide the sufficient evidence in English to prove the reputation of its mark, the Respondent "admits it knew of the Complainant and that the content that will be placed on the site will be relevant to the

alleged wrongdoing by the Complainant." The Panel, therefore, finds for the Complainant regarding the degree of distinctiveness or notoriousness of the complainant's mark.

The Panel notes that the Respondent does submit the Response and evidence regarding its intended good-faith use, which enables the Panel to access information and hear from both Parties. Although the Respondent does not manage to prove its right or legitimate interest to the disputed domain name, this case is completely different from the default cases in which the Panels primarily base their discoveries on the Complainants' submissions. The Panel, therefore, find against the Complainant for this factor.

The Complainant contends that the Respondent is concealing its identity or using false contact information while registering the domain. The Respondent vigorously rebuts the Complainant's contention and states that the telephone number, email address and other contact details are effective. The Panel finds no factual basis that the Respondent is concealing its identity or using false contact information while registering the disputed domain name. The factor thus weighs again the Complainant.

The Panel does not find the sufficient proof from the Complainant that the Respondent is implausible to put the disputed domain name into any good faith use. On the contrary, the Respondent's contention on its contemplated use for critical journalism directs to plausible good faith use of the disputed domain name. The Panel emphasizes that the Complainant bear more burden of proof than the Respondent with respect to the element of bad faith stipulated in the Paragraph 4(a)(iii) of the Policy. Where the Complainant fails to fulfil its burden of proof, it must face the negative consequence.

Having considered the totality of the circumstances in this case, the Panel finds that the Respondent's bad faith of passive holding is not found.

In conclusion, the Panel does not find the conclusive proofs on the Respondent's registration and use of the disputed domain name in bad faith under the Policy, Paragraph 4(b), and the Complainant fails to prove the element required by the Paragraph 4(a)(iii) of the Policy.

Notwithstanding the Panel's findings, the proceeding under the Policy shall not prevent either Party from submitting the dispute to a court of competent jurisdiction for independent resolution. If the case involves more complicated issues that cannot be fully examined or investigated in the expedited proceeding under the Policy and the Rules, the Parties have all the freedom to resort to litigation, arbitration or any other dispute resolution mechanism.

**D. Reverse Domain Name Hijacking**

Under the Rules, the Paragraph 15(e), the Panel shall declare in its decision that the

complaint was brought in bad faith and constitutes an abuse of the administrative proceeding, if, after considering the submissions, finding that the complaint was brought in bad faith, for example in an attempt at Reverse Domain Name Hijacking or was brought primarily to harass the domain-name holder.

Although the Respondent contends that the Complainant had sent an email to the Respondent to trick it and concealed that Respondent never replied, the Panel finds no proofs that the Complainant had send the email to entrap the Respondent to sell the disputed domain name.

Under the Policy, Panels have found that the mere lack of success of a complaint is not itself sufficient for a finding of Reverse Domain Name Hijacking. Although the Complainant is not able to prove its case, the unsuccessful Complaint, per se, does not constitute Reverse Domain Name Hijacking. Neither the Respondent's allegation on the Complainant's act of Reverse Domain Name Hijacking suffices such a finding.

In finding of Reverse Domain Name Hijacking, Complainant must have the actual intent to deprive a registered domain-name holder of a domain name in bad faith. Based on the Complainant's submissions, the Panel finds, the Complainant seeks to transfer the disputed domain name from the Respondent in the genuine belief that the Respondent conducts an abusive registration against its legitimate trademark interest, not attempting to deprive the Respondent's domain name registration in bad faith.

Therefore, there is no sufficient reason for a finding of Reverse Domain Name Hijacking against the Complainant.


## 5. Decision

For all the foregoing reasons, in accordance with the Paragraphs 4(i) of the Policy and the Paragraph 15 of the Rules, the Panel orders that the Complaint be dismissed.


Sole-panelist:


Dated: 8 March 2018