EXHIBIT E



Asian Domain Name Dispute Resolution Centre

ADNDRC   hong kong

LOGED   **MAIL**
RECEIVED

MAR 27 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                      DEPUTY

**(Hong Kong Office)**
**ADMINISTRATIVE PANEL DECISION**

| | |
|---|---|
| **Case No.** | **HK-18010195** |
| **Complainant:** | **Evergrande Realestate Group Co., Ltd.** |
| **Respondent:** | **Central American Domain Authority Ltd** |
| **Disputed Domain Name:** | **<evergranderealestate.com>** |

## 1.   The Parties and Contested Domain Name

The Complainant is **Evergrande Realestate Group Co., Ltd.** whose address is situate at Excellence Houhai Financial Center,No.1126, Haide Third Road, Nanshan District, Shenzhen City, China.

The Respondent is **Central American Domain Authority Ltd** whose address is situate at Apartado 599-1250, Escazu, San Jose, Costa Rica.

The domain name at issue is <evergranderealestate.com> ("**the Disputed Domain Name**"), registered by the Respondent with the registrar, **Epik, Inc** ("**the Registrar**") whose email address is joseph@epik.com.

## 2.   Procedural History

On 27 November 2018, the Complainant filed a Complaint with Hong Kong International Arbitration Centre, the Hong Kong Office ("**Hong Kong Office**") of Asian Domain Name Dispute Resolution Centre ("**ADNDRC**") pursuant to the Uniform Domain Name Dispute Resolution Policy  approved by the Internet Corporation for Assigned Names and Numbers ("**ICANN**") on 24 October 1999 ("**Policy**" or "**UDRP**"), the Rules for Uniform Domain Name Dispute Resolution Policy, approved by ICANN Board of Directors on 28 September 2013 ("**Rules**") and the ADNDRC Supplemental Rules for Uniform Domain Name Dispute Resolution Policy effective from 31 July 2015 ("**Supplemental Rules**").

On 29 November 2018, Hong Kong Office transmitted by email to the Registrar a request for confirmation of the WHOIS records of the Disputed Domain Name and other related information.

On 4 December 2018, the Registrar confirmed that the Disputed Domain Name was registered by the Respondent for a period 3 years from 2017-10-15 to 2020-10-15; and that

the Policy is applicable to the dispute relating to this domain name; and advised that the language of the Registration Agreement of the Disputed Domain Name is English and also the other relevant WHOIS information of the Respondent.

On 12 December 2018, in accordance with Articles 2(a) and 4(a) of the Rules, Hong Kong Office issued a Written Notice of the Complaint, thereby formally notified the Respondent of the Complaint.  In accordance with Article 5(a) of the Rules, the due date for the submission of a Response to the Complaint was 26 December 2018.

On 26 December 2018, the Respondent filed to ADNDRC a document entitled "EMERGENCY PETITION PURSUANT TO UDRP POLICY SECTION 4(f), "CONSOLIDATION," TO TRANSFER THE SUBSEQUENT DUPLICATIVE CASE TO THE BEIJING DIVISION, BEFORE ORIGINAL PANELIST (in CN 1801135)" (**"the First Petition"**).

On 2 January 2019, Hong Kong Office received a response to the First Petition from the Complainant.

On 2 January 2019, in addition to the Response (in Form R) to the Complaint, the Respondent also submitted to Hong Kong Office the following documents:

(i)  "RENEWED PETITION TO CONSOLIDATE PURSUANT TO UDRP POLICY 4(F)";
(ii) "PETITION TO DISMISS FOR RES JUDICATA";
(iii) "PETITION TO STRIKE ALL CHINESE-LANGUAGE DOCUMENTS AND EVIDENCE"; and
(iv) "PETITION TO FIND REVERSE DOMAIN NAME HIJACKING PURSUANT TO UDRP RULE 15(E)".

On 4 January 2019, Hong Kong Office received from the Complainant a final response to the Respondent's Response and Petitions filed on 2 January 2019 as aforesaid.

On 28 February 2019, Hong Kong Office appointed Mr. Raymond HO as the sole panelist of the Panel in this matter; and transmitted the case file to the Panel on the same date. Prior to the appointment, the said sole panelist had submitted to Hong Kong Office his Statement of Acceptance and Declaration of Impartiality and Independence in compliance with Article 7 of the Rules.

On 5 March 2019, after reading the case file, the Panel conducted public searches on the ICANN WHOIS LOOKUP on the following five domain names, namely:
(1)< jfeholdings.com>, (2)<rockwoodholdings.com>, (3)<aichibank.net>
(4)<haitongsecurities.com>, and (5) <otsukaholdings.com>; and obtained the WHOIS records of these 5 domains (collectively, **"ICANN WHOIS RECORDS"**). On the same day, the Panel issued Procedural Order No. 1 and ordered and directed (inter alia) that (i) a list of all items of new evidence claimed to have been introduced by the Complainant in the present action be provided by the Complainant; and the Respondent may respond after receipt of such a list; and (ii) there be liberty for the Parties to comment on the ICANN WHOIS RECORDS.

On 11 March 2019, Hong Kong Office received from the Complainant a list of new evidence and other supplementary material; and also the Respondent's comments on the ICANN WHOIS RECORDS with a copy of the Affidavit of Sergio Sanchez dated 7 March 2014 ("**SS Affidavit**").

On 14 March 2019, Hong Kong Office received the Respondent's response to the Complainant's list of new evidence.

## 3.   Factual Background

The Complainant, Evergrande Realestate Group Co., Ltd., is incorporated and existing under the laws of China, engaging principally in the business of real estate in China . By a Power of Attorney addressed to ADNDRC, Beijing Office and dated 1 August 2018, the Complainant appointed Beijing Chofn Intellectual Property Agency Co., Ltd. (the "**Agent**") whose address is situate at 1217 12F, Zuoan Gongshe, No. 68, North 4th Ring West Road, Haidian District, Beijing, 100080, China as its authorized representative to file a complaint against the Respondent, Central American Domain Authority Ltd., who had registered the Disputed Domain Name, <evergranderealestate.com>.

The Respondent registered the Disputed Domain Name on 15 October 2017. The record indicates that the Disputed Domain Name has been resolved to a parking page which stated as follows:
*"THIS WEB PAGE IS PARKED FREE COURTESY OF EPIK.COM*
*EVERGRANDEREALESTATE.COM*
*This website is not for sale. Informative information will be published soon.*
*All information in the public interest."*

This case involves a refiled complaint. The Disputed Domain Name was the subject of a prior proceeding, CN-1801135 (the "**Original Action**"), brought by the Complainant against the Respondent that was filed with ADNDRC, Beijing Office on 25 January 2018. In that case, the sole panelist, Ms. Xue Hong ("the **Original Panelist**") denied the complaint on 8 March 2018, concluding that the Complainant failed to satisfy the third element of the Policy.

## 4.   Preliminary Issues

### (1)   Consolidation, etc.

In the First Petition, the Respondent alleged that the present Complaint was nearly identical to the Original Action. This Complaint was the second case filed by the Complainant with ADNDRC, Hong Kong Office after the decision of the Original Action. It is the submission of the Respondent that pursuant to paragraph 4(f) of the Policy, the present Complaint should be consolidated and transferred to ADNDRC, Beijing Office, and should be dealt with by the Original Panelist. In the Renewed Petition subsequently filed in Form R by the Respondent, the Respondent reiterated its submission in the First Petition. The Respondent also submits that by refiling the present Complaint with ADNDRC's Hong Kong Office, the Agent (not the Complainant) was engaging in "forum

shopping" as the Power of Attorney dated 1 August 2018 given by the Complainant to the Agent was addressed to ADNDRC's Beijing Office but not ADNDRC's Hong Kong Office.  In the response the Complainant denies forum shopping but said that the Complainant would agree to consolidation and would also agree that this present Complainant be dealt with by the Original Panelist.

Having carefully considered all the submissions, the Panel DISMISSES the Respondent's RENEWED PETITION TO CONSOLIDATE PURSUANT TO UDRP POLICY 4(F) for the reasons set out hereunder:

A. Paragraph 4(f) of the Policy provides: *"In the event of multiple disputes between [the respondent] and a complainant, either [the respondent] or the complainant may petition to consolidate the disputes before a single Administrative Panel. This petition shall be made to the first Administrative Panel appointed to hear a pending dispute between the parties. This Administrative Panel may consolidate before it any or all such disputes in its sole discretion, provided that the disputes being consolidated are governed by this Policy or a later version of this Policy adopted by ICANN."*
In the present Complainant, the Original Action is a concluded matter, not a pending case; and the Original Panelist has become 'functus officio' after handing down her decision in the Original Action.

B. Under paragraph 6(b) of the Rules, it is provided that *"[if] neither the Complainant nor the Respondent has elected a three member Panel, the Provider shall appoint, ...., a single Panelist from its list of panelists."*  The power to appoint a sole panelist is vested with ADNDRC, Hong Kong Office as the Provider, where this present Complaint was filed.  There is no provision in the Policy or the Rule that restricts the Provider to appoint a single panelist chosen by the Parties.  The power to appoint is not vested with the Parties.

C. As the Policy contains no appeal mechanism, there is no express right to refile a complaint.  Forum shopping by refiled complaints is generally denied under the Policy.  On a reading of the Power of Attorney, the delegated authority given by the Complainant to the Agent extends to ADNDRC, not necessarily restricted to ADNDRC, Beijing Office.  No issue can therefore be taken that the filing of the present Complaint with ADNDRC, Hong Kong is that the Agent, not of the Complainant.

**(2)  Refiled Case**

The Panel agrees with the Respondent's submission in relation to refiled complaints.

As set out in paragraph 4.18 of WIPO Jurisprudential Overview 3.0,  refiled complaints would be *"accepted only in highly limited circumstances such as (i) when the complainant establishes that legally relevant developments have occurred since the original UDRP decision, (ii) a breach of natural justice or of due process has objectively occurred, (iii) where serious misconduct in the original case (such as perjured evidence) that influenced the outcome is subsequently identified, (iv) where new material evidence that was reasonably unavailable to the complainant during the original case is presented, or (v)*

4

*where the case has previously been decided (including termination orders) expressly on a "without prejudice" basis."*

The Complainant relies on two grounds in support of its case of refiling, namely: (a) there are two items of new evidence in the present Complaint; and (b) the decision in the Original Action was made expressly on a "without prejudice" basis.

First, the Panel considers that there is no merit in the Complainant's "without prejudice" ground. There is the following passage in the decision of the Original Action which says:

*"Notwithstanding the Panel's findings, the proceeding under the Policy shall not prevent either Party from submitting the dispute to a court of competent jurisdiction for independent resolution. If the case involves more complicated issues that cannot be fully examined or investigated in the expedited proceeding under the Policy and the Rules, the Parties have all the freedom to resort to litigation, arbitration or any other dispute resolution mechanism."*

It is clear that this passage is of no assistance to the Complainant's case for refiling its complaint.   As said earlier, there is no appeal mechanism under UDRP and there is no express right to refile a complaint despite that the Complainant may resort to an action in court.  By arbitration or any other dispute resolution mechanism in this passage, it is clearly referring to mechanism that does not form part of the Policy.

Second, the Panel also considers that the first item of new evidence alleged by the Complainant is no assistance to the Complainant's case for refiling. In the present Complaint, the Complainant relied on the evidence of a returned courier sent to the WHOIS address of the Respondent on July 17, 2018. This was allegedly returned due to "the destination could not be found". The Complainant contends that false contact address has been used by the Respondent in breach of the Registration Agreement of the Disputed Domain Name. Without the necessities of going into Parties' contentions on this item of evidence, the Panel considers that it does not constitute new material evidence that was reasonably unavailable to the Complainant when the Original Action was filed.

Third, what remains for consideration by the Panel is the second item of new evidence alleged to have been introduced by the Complainant in the present action.

A.  Under Section 8(iii) of the Complaint, it was claimed by the Complainant (at pages 10 and 11 thereof), inter alia, as follows:

*"Similarly, in instant case, the Respondent also registered the following domain name, which is similar to the way in which the disputed domain name is constructed: 1.jfeholdings.com; 2.rockwoodholdings.com; 3.aichibank.net; 4.haitongsecurities.com; 5.otsukaholdings.com. The specific analysis is as follows:*
      ◆*jfeholdings.com:*
*The main part of the domain name consists of "jfe" + "holdings". JFE Holdings, Inc., one large Japanese corporation for  steelmaking/engineering and trading possesses its official domain name of jfeholdings.co.jp, but the domain "jfeholdings.com" registered by the respondent is very similar to JFE Holdings, Inc.'s official website domain name. At present, the domain name has not been put into actual use, and it is in a parked free state as well.*

◆*rockwoodholdings.com*：
*The domain name is made up of "rockwood" + "holdings". Rockwood Holdings, Inc., one specialty chemicals and industrial advanced raw material provider, is the producer, manufacturer and marketer. Now, it is listed on the New York Stock Exchange (NYSE), with the stock abbreviation: ROC. The rockwoodholdings.com domain name clearly points to the listed company. At present, the domain name has not been put into actual use, and it is in a parked free state as well.*

◆*aichibank.net*：
*Aichibank is one large Japanese bank with the official website: aichibank.co.jp. The domain name registered by the respondent is very similar to the official website domain name, and the main part is identical. At present, the domain name has not been put into actual use, and it is in a parked free state as well.*

◆*haitongsecurities.com*：
*Haitong Securities Co. Ltd is an international large financial services company with stock code: 600837.SH; 6837.HK. It serves over 200,000 large companies and institutional clients. There are offices in Hong Kong, Singapore, New York, London, Tokyo and other places. The aforementioned domain name is almost the same as the company name. At present, the domain name has not been put into actual use, and it is also in a parked free state.*

◆*otsukaholdings.com*：
*Otsuka holdings Co., Ltd. Is a large pharmaceutical group company with official website: Otsuka.com/jp/. The domain name registered by the respondent is the same as the main part of its official website and is identical to its company name. The domain name has been put into practical use.*
*The aforementioned domain names registered by the respondent are consistent with the trademarks, logos, and names of large well-known companies and most of the domain names are in packed-free status. In instant case, the other domain names registered by the Respondent are also the pattern "well-known mark+ generic term". The disputed domain name is just one of them. From this fact, the registration of the above-mentioned domain names by the respondent has constituted a pattern of such conduct known as "cyber-squatting", and its behavior as a whole constitutes a bad faith situation as stipulated in UDRP 4(b) (ii)."*

**B.** Under sub-paragraph (6.8) of the Response in the present case, it was stated by the Respondent, inter alia, that *"Respondent confirm[s] that claim at Section 8(iii), pages 10 and 11, that the other domains were registered by it. This was raised by Complainant and admitted to by Respondent at CN-1801135. However, these domain registrations were also in good faith, have not been the basis of disputes, and were known to Complainant at the time of the original case."*

**C.** On page 19 of the decision of the Original Action, it was states, inter alia, that *"[the ] Panel notes that the Complainant does not submit any proof that the Respondent has engaged in a pattern of conduct of registering multiple domain names to prevent the owners of the marks from reflecting the marks in the correspondent domain names, although the Respondent concedes that it "registered domains similar to many company names." Based on the evidence received from the Parties, the Panel cannot find applicability of the Paragraph 4(b)(ii) of the Policy for the Complainant."*

**D.** From the ICANN WHOIS RECORDS obtained by the Panel on 5 March 2019, the Panel notes that:

(a)   with the exception of <otsukaholdings.com>, all the other 4 domains, namely: <jfeholdings.com>, <rockwoodholdings.com>, <aichibank.net> and <haitongsecurities.com> were registered on 15 October 2017, the same date when the Disputed Domain Name was registered. They were registered by the same registrar, Epik, Inc., each for a period of two years from 15 October 2017 to 15 October 2019; and

(b) All these four domains were registered under the name of "Privacy Administrator" in the name of the organization of "Anonymize, Inc. with an address in Sammamish WA, US.

**E.** In the SS Affidavit, after referring to the 5 domains in the ICANN WHOIS RECORDS Sergio Sanchez stated under oath that:

> "3.    Otsukaholdings.com does not appear to be a domain I registered. My domain is otsukaholding.com with the "s".
> 4.   In the Complainant's initial complaint, it cited these exact domain names and asked the Panel to consider them as evidence of bad faith."

However, the Panel has great difficulty in accepting the sworn testimony at paragraph 4 of the SS Affidavit at face value as it was stated.  The record clearly shows none of these 5 domains were before the Original Panelist by name. Nowhere in the decision in the Original Action was any of these 5 domains mentioned by name. The domains referred to on page 18 of the decision in the Original Action were <eutelsatcommunications.com> and <tevapharmaceuticalinds.com> but not any of these 5 domains.  In Exhibit 1 (Respondent's Form R in the Original Action) submitted by the Respondent in its response to the Complainant's list of new evidence, none of these 5 domains appears by name in the Form R filed by the Respondent in the Original Action.  As referred above, the Original Panelist categorically stated in her decision that *"the Complainant does not submit any proof that the Respondent has engaged in a pattern of conduct of registering multiple domain names"*.  Therefore it must be concluded on a balance of probabilities that none of these 5 domains were cited by the Complainant in the Original Action.

On 18 March 2018 the Panel conducted another  public search on the ICANN WHOIS Lookup and found that <Otsukaholding.com> was similarly registered on 15 October 2017 by Epic, Inc. for a period of 2 years under the name of "Privacy Administrator" in the name of the organization of "Anonymize, Inc.  No doubt, the Complainant has mistakenly put an "s" at the end of this domain name in this present Complaint.

**F.** Given that all the aforesaid 5 domains were under "proxy" registration irrespective of whoever was responsible for making or causing these domains to be under "proxy" registration, it can reasonably be inferred that information of these five domains that were registered by the Respondent was not readily available to the Complainant during the Original Action.

Based on the above, the Panel considers that the evidence of the aforesaid 5 domains constitute new material evidence on whether the Respondent has engaged in a pattern of conduct of registering multiple domain names by cybersquatting on well-known company names in China, Japan , the US and other parts of the world.

Based on all the aforesaid, the Panel concludes that the refiled Complaint in the present action warrants a de novo review by the Panel. The Panel therefore DISMISSES the Respondent's PETITION TO DISMISS FOR RES JUDICATA.

### (3) Language of the proceeding

Based on the confirmation provided by the Registrar, the Panel finds that the Registration Agreement of the Disputed Domain Name is in English.

Article 11 of the Rules provides:

> *"(a) Unless otherwise agreed by the Parties, or specified otherwise in the Registration Agreement, the language of the administrative proceeding shall be the language of the Registration Agreement, subject to the authority of the Panel to determine otherwise, having regard to the circumstances of the administrative proceeding.*
> *(b) The Panel may order that any documents submitted in languages other than the language of the administrative proceeding be accompanied by a translation in whole or in part into the language of the administrative proceeding."*

The language used by the Parties in this proceeding is English.

The Respondent has requested that Annex 3, 4, 5, 6 and 7 to the Complaint be struck out as they are in Chinese with no translation in English. The Panel finds this request contradictory to what the Respondent has claimed in this Complainant that it was engaging in public interest advocacy work on the Complainant whose businesses are principally in China. With no Chinese language capability it is doubtful as a matter of common sense how the public interest advocacy work could be accomplished by the Respondent. Notwithstanding this observation, the Panel has reviewed the documents annexed to the Complainant. The Panel finds that Annex 4 contains only copies of trademark certificates issued by the Chinese trademark authority. The relevant information on these trademark certificates has already been translated into English in the body of the Complainant. The Panel therefore admits Annex 4 as evidence in this Complaint.

Based on the aforesaid, the Panel accepts the Respondent's PETITION TO STRIKE ALL CHINESE-LANGUAGE DOCUMENTS AND EVIDENCE but limited to Annex 3, 5, 6 and 7 only.

### 5.    Parties' Contentions

### A.    Complainant's Contentions

8

One of the contentions upon which the Complainant is based is the trademark rights in "EVERGRANDE" owned and registered by Complainant, part of these trademarks or service marks are shown and exhibited in the trademark certificates produced at Annex 4 to the Complaint as summarized below

| No. | Trademark | Appl. Date | Reg. No. | Class | Goods/Services |
|-----|-----------|------------|----------|-------|----------------|
| 1 | EVERGRANDE | 2007-09-10 | 6269524 | 35 | 广告,publicity,3501; 饭店商业管理,Business management of hotels,3502; 组织商业或广告交易会,Organization of trade fairs for commercial or advertising purposes,3502; 人事管理咨询,personnel management consulting,3504; 文秘,Secretarial services,3506; 会计,book-keeping,3507; 自动售货机出租,Rental of vending machines,3508; 办公室用机器和设备的租赁,3506*;商业场所搬迁,,3505*; |
| 2 | EVERGRANDE | 2007-09-10 | 6269525 | 36 | 保险,insurance underwriting,3601; 金融评估(保险、银行、不动产),Financial evaluation [insurance、banking、real estate],3602; 艺术品估价,Appraisal (Art –),3603; 办公室(不动产)出租,Rental of offices [real estate],3604; 不动产出租,leasing of real estate,3604; 不动产代理,real estate agencies,3604; 不动产管理,real estate management,3604; 不动产经纪,Housing agents,3604; 公寓出租,penting of flats,3604; 公寓管理,apartment house management,3604; 农场出租,leasing of farms,3604; 商品房销售,sales of commercial housing,3604; 住房代理,real estate brokers,3604; 住所(公寓),accommodation bureaus,3604; 经纪,brokerage,3605; 代管产业,,3606; 担保,Guarantees,3606; 募集慈善基金,charitable fund raising,3607; 代管产业,Factoring,3608; 典当,pawn,3609; |

| | | | | | |
|---|---|---|---|---|---|
| 3 | EVERGRANDE | 2007-09-10 | 6269526 | 37 | 建筑施工监督,Building construction supervision,3701; 拆除建筑物,Demolition of buildings,3702; 建筑,Construction,3702; 商品房建造,Commercial housing construction,3702; 商业摊位及商店的建筑,Building of fair stalls and shops,3702; 清洁建筑物(内部),Buildings (Cleaning of –) [interior],3704; 清洁建筑物(外表面),Buildings (Cleaning of – ) [exterior surface],3704; 保险柜的保养和修理,Safe maintenance and repair,3712; 防锈,Rustproofing,3713; 家具制造(修理),Cabinet making [repair],3715; 灭鼠,Rat exterminating,3717; 消毒,Disinfecting,3717; 电话安装和修理,Telephone installation and repair,3718; 电梯安装和修理,Construction information,3718; 火警器的安装与修理,Fire alarm installation and repair,3718; 娱乐体育设备的安装和修理,entertainment physical training,3718; 建筑结构监督,,3701*;室内装璜,,3704*;车辆服务站(加油和维护),,3707*;供暖设备的安装和修理,,3705*;空调设备的安装与修理,,3706*;电器设备的安装与修理,,3706*;洗涤,,3716*;防盗报警系统的安装与维修,,3718*;电影放映机的修理,,3710*; |
| 4 | EVERGRANDE | 2007-09-10 | 6269528 | 39 | 搬迁,removals,3901; 运送乘客,Passenger transport,3901; 海上运输,marine transport,3902; 汽车运输,car transport,3903; 汽车出租,Car rental,3905; 停车场服务,Car parking,3905; 停车位出租,Garage rental,3905; 仓库出租,rental of warehouses,3906; 观光旅游,sightseeing,3911; 旅游安排,,3911*; |
| 5 | EVERGRANDE | 2007-09-10 | 6269530 | 41 | 教学,Teaching,4101; 培训,Instruction services,4101; 学校(教育),academies,4101; 幼儿园,Schools (Nursery –),4101; 安排和组织会议,Arranging and conducting of conferences,4102; 安排和组织专题研讨会,Arranging and conducting of symposiums,4102; 组织教育或娱乐竞赛,Organization of competitions [education or entertainment],4102; 组织文化或教育展览,Organization of exhibitions for cultural or educational purposes,4102; 出借书籍的图书馆,Lending libraries,4103; 书籍出版,publication of books,4104; 在线电子书籍和杂志的出版,Publication of electronic books and journals on-li,4104; 电影放映,Cinema facilities (Providing –),4105; 假日野营娱乐服务,Holiday camp services [entertainment],4105; 健身俱乐部,health club services [health and fitness training],4105; 节目制作,Shows (Production of –),4105; 俱乐部服务(娱乐或教育),Club services [entertainment or education],4105; 提供高尔夫球设施,Golf facilities (Providing –),4105; 提供体育设施,Providing sports facilities,4105; 提供娱乐设施,providing recreation facilities,4105; 体育场设施出租,Rental of stadium facilities,4105; 体育设备出租(车辆除 |

| | | | | |
|---|---|---|---|---|
| | | | | 外),Sports equipment (Rental of –) [except vehicles],4105; 网球场出租,Rental of tennis courts,4105; 游乐园,Parks (Amusement –),4105; |
| 6 | EVERGRANDE | 2007-09-10 | 6269531 | 42 | 城市规划,Urban planning,4209; 工程绘图,engineering drawing,4209; 地质调查,geological surveys,4210; 工业品外观设计,industrial design,4216; 建设项目的开发,Construction projects development,4217; 建筑制图,construction drafting,4217; 室内装饰设计,interior decorating,4217; 艺术品鉴定,Works of art (Authenticating –),4224; 无形资产评估,invisiable asset evaluation,4227; 工程,,4209*; |
| 7 | EVERGRANDE | 2007-09-10 | 6269532 | 43 | 餐馆,Restaurants,4301; 餐厅,Canteens,4301; 饭店,Hotels,4301; 寄宿处,Houses (Boarding –),4301; 会议室出租,Rental of meeting rooms,4302; 活动房屋出租,Rental of transportable buildings,4302; 旅游房屋出租,Tourist homes,4302; 养老院,Retirement homes,4303; 日间托儿所(看孩子),Day-nurseries [crèches],4304; 酒吧,,4301*; |
| 8 | EVERGRANDE | 2007-09-10 | 6269533 | 44 | 休养所,Sanatoriums,4401; 医院,Hospitals,4401; 饮食营养指导,food nutrition guidance,4401; 公共卫生浴,Public baths for hygiene purposes,4402; 理发店,Salons (Hairdressing –),4402; 美容院,Salons (Beauty –),4402; 农场设备出租,Farming equipment rental,4404; 园艺,Gardening,4404; 植物养护,Plant nurseries,4404; 庭院设计,,4404*; |
| 9 | EVERGRANDE | 2007-09-10 | 6269534 | 45 | 安全及防盗警报系统的监控,Monitoring of burglar and security alarms,4501; 护卫队,Guards,4501; 家务服务,Housework Service,4502; 临时照看婴孩,LSZKYH,4502; 服装出租,Clothing rental,4503; 火警报警器出租,HJBJQCZ,4505; 灭火器出租,MHQCZ,4505; 调解,TJ,4506; 法律研究,legal research,4506; 消防,Fire-fighting,4505; |

The Complainant also claims that it has secured a large under domains that have been used in the Complainant's business operations, including 1) evergrande.cn; 2) evergrande.com; 3) evergrandeebusiness.com; 4) evergranderetail.com;

5) evergrandesell.com; 6) evergrandebuy.com; 7) evergrandeshopping.com; 8) /
evergrandeeb.com; 9) evergrandeec.com; 10) evergrandeecommerce.com; 11)
evergrandenet.com; 12) / evergrandemedia.com; 13) evergrandefinancial.com; 14)
evergrandemine.com; 15) evergrandeluxury.com; 16) evergrandepublish.com; 17)
evergrandelogistics.com; 18) evergrandebanks.com; 19) evergrandefunds.com; 20)
evergrandesecurity.com; 21) evergrandeenergy.com; 22) evergrandefashion.com; 23)
evergrandeinternet.com; 24) evergrandegame.com; 25) evergrandeschools.com; 26)
evergrandeinvests.com; 27)evergrandetobacco.com; 28) evergrandeclothing.com; 29)
evergrandeit.com; 30) evergrandeeducation.com; 31) evergrandecar.com; 32)
evergrandetea.com; 33) evergrandecoffee.com; 34) evergrandefruit.com; 35)
evergrandeinformation.com; 36) evergranderihua.com; 37) evergrandeshow.com; 38)
evergrandemusics.com; 39) evergrandecartoon.com; 40) evergrandedrink.com; 41)
evergrandewines.com; 42) evergrandeagri.com; 43) evergrandebeauty.com; 44)
evergrandecultural.com; 45) evergrandebroker.com; 46) evergrandegrainoil.com; 47)
evergrandegrain.com; 48) evergrandeliangyou.com; 49) evergrandefarming.com; 50)
evergrandehealth.com; 51) evergrandehospitals.com; 52) evergranderenshen.com; 53)
evergrandedairygroup.com; 54) evergrandexumu.com; 55) evergrandegrainoil.com; 56)
evergrandetraffic.com; 57) evergrandesupermaket.com; 58) evergrandebaihuo.com; and 59)
evergrandegarden.com.

It is the Complainant's contention that each of the conditions in Paragraph 4(a) of the Policy is
present in the Complaint, namely:

    (i)    The Disputed Domain Name is confusingly similar to Complainant's trademark
"EVERGRANDE";
    (ii)  The Respondent has no rights or legitimate interests in the registration of the
Disputed Domain name; and
    (iii) The Respondent has registered and used the Disputed Domain Name in bad faith.

Section 8 of the Complaint contains a summary of the grounds on which the Complaint is made:

i) The disputed domain name(s) is/are identical or confusingly similar to a trademark or service
    mark in which the Complainant has rights:

    The Disputed Domain Name was registered on 15 October 2017. Prior to that date, the
    Complainant has registered its "evergrande" trademarks referred above. Excluding the
    gTLD suffix ".com", the remaining distinctive portion of the Disputed Domain Name is
    "evergranderealestate", consisting of  "evergrande" and "realestate". "EVERGRANDE",
    as one coined element, is being used for the Complainant's core trademark and trade name.
    With one additional generic term "realestate", which is descriptive to real estate, the main
    business of the Complainant. The Complainant contends that "EVERGRANDE", per se,
    has been invented without any meaning and should be viewed inherently distinctive. With
    the co-existence of "evergranderealestate" and "evergrande", it could mislead the public to
    believe that the Disputed Domain Name might be the Complainant's official site, or
    having business connection, sponsorship, authorization, and cooperation relationship with
    the Complainant.

    In light of the above, the Complainant submits that the Disputed Domain Name could be
    confusingly misleading to the Complainant's trademark "EVERGRANDE".

ii) The Respondent has no rights or legitimate interests in respect of the domain name(s):

    (1)The Respondent has no trademark rights regarding the Disputed Domain Name.
    (2)The Respondent has no other rights regarding the contested domain name.
    "Central American Domain Authority Ltd" as a company name, obviously, could not have trade name rights in word "evergrande". Due to the "parked-free" status of the Respondent's website, the Complainant submits that evidently there has been no bona-fide or other use of the Disputed Domain Name.

iii) The disputed domain name(s) has/have been registered and is/are being used in bad faith:

According to Paragraph 4 (b) of UDRP, four non-exclusive criteria which shall be evidence of the registration and use of the disputed domain name in bad faith: (i) the respondent has registered or has acquired the domain name primarily for the purpose of selling, renting , or otherwise transferring the domain name registration to the claimant who is the owner of the trade mark or service mark or to a competitor of that claimant for valuable consideration in excess of the respondent's documented out-of-pocket costs directly related to the domain name; or (ii) the respondent has registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that you have engaged in a pattern of such conduct; (iii) the respondent has registered the domain name primarily for the purpose for the purpose of disrupting the business of a competitor; or (iv) by using the domain name, the respondent has intentionally attempted to attract, for commercial gain, Internet users to its web site or other on-line location, by creating a likelihood of confusion with the claimant's mark as to the source, sponsorship, affiliation, or endorsement of its web site or location or of a product or service on its web site or location.

According to UDRP 4(b)(ii), the Complainant already obtained adequate evidences/reasons to prove the hidden fact that the registration conduct of the disputed domain is to prevent the true/only trademark owner, namely the Complainant from utilizing the domain name. The above was concluded by the followings：1. The similarity of the trademark and the domain name is obviously high, which could lead to the wrong recognition of the consumers; 2. The disputed domain is one direct reference to the Complainant's main business----real estate. There are no other words except Complainant's core brand "evergrande" and the business term "real estate" in the disputed name; 3. Once the disputed trademark is put into actual use, the Internet users would consider it to be operated by the Complainant. Moreover, for the Complainant, the use of the disputed domain name to reflect its real estate business is one ideal strategy choice. The registration of the disputed domain name by the Respondent is nothing more than "preempting" the domain name resource, preventing the Complainant from using the domain name in advance, and then might be forming "shock" and "threat" to the Complainant, and then might be taking the opportunity to achieve other preset purposes. Also, the behavior of the Respondent is a "pattern of conduct" what is known as "cyber-squatting". If the domain name holder reserved the domain name in order to prevent the owner of the trademark or service mark from embodying the mark in a domain name, this is evidence of bad faith, if such behavior was part of a pattern of similar conduct. In many precedents, registering the domain name to block the trademark owner is an evidence of finding bad faith. In a precedent, three separate registrations of domain names incorporating the LEGO trademark by the same respondent is in the panel's view sufficient

to constitute a pattern of registration targeting the complainant in order to prevent the complainant from reflecting its LEGO trademark in corresponding domain names under paragraph 4(b)(ii) of the Policy. Lego Juris a/s v. Privacyprotect.org/kim bum, WIPO D2013-0402, 2013 WL 2153836 (April 28, 2013). In Udomain Web Hosting Company v. Lei Soi Iong & Au Sio Tong (Case No. HK-0500068), the panel found that that respondents and their group did similar conduct, such conduct prevented the relevant complainant from registering and using the domain names under dispute when such complainant had been operating its business under such name.

Similarly, in instant case, the Respondent also registered the following domain name, which is similar to the way in which the disputed domain name is constructed: 1.jfeholdings.com; 2.rockwoodholdings.com; 3.aichibank.net; 4.haitongsecurities.com; 5.otsukaholdings.com. The specific analysis is as follows:

◆jfeholdings.com:
The main part of the domain name consists of "jfe" + "holdings". JFE Holdings, Inc., one large Japanese corporation for steelmaking/engineering and trading possesses its official domain name of jfeholdings.co.jp, but the domain "jfeholdings.com" registered by the respondent is very similar to JFE Holdings, Inc.'s official website domain name. At present, the domain name has not been put into actual use, and it is in a parked free state as well.

◆rockwoodholdings.com：
The domain name is made up of "rockwood" + "holdings". Rockwood Holdings, Inc., one specialty chemicals and industrial advanced raw material provider, is the producer, manufacturer and marketer. Now, it is listed on the New York Stock Exchange (NYSE), with the stock abbreviation: ROC. The rockwoodholdings.com domain name clearly points to the listed company. At present, the domain name has not been put into actual use, and it is in a parked free state as well.

◆aichibank.net：
Aichibank is one large Japanese bank with the official website: aichibank.co.jp. The domain name registered by the respondent is very similar to the official website domain name, and the main part is identical. At present, the domain name has not been put into actual use, and it is in a parked free state as well.

◆haitongsecurities.com：
Haitong Securities Co. Ltd is an international large financial services company with stock code: 600837.SH; 6837.HK. It serves over 200,000 large companies and institutional clients. There are offices in Hong Kong, Singapore, New York, London, Tokyo and other places. The aforementioned domain name is almost the same as the company name. At present, the domain name has not been put into actual use, and it is also in a parked free state.

◆otsukaholdings.com：
Otsuka holdings Co., Ltd. is a large pharmaceutical group company with official website: otsuka.com/jp/. The domain name registered by the respondent is the same as the main part of its official website and is identical to its company name. The domain name has been put into practical use.

The aforementioned domain names registered by the Respondent are consistent with the trademarks, logos, and names of large well-known companies and most of the domain names are in packed-free status. In instant case, the other domain names registered by the Respondent are also the pattern "well-known mark+ generic term". The disputed domain name is just one of them. From this fact, the registration of the above-mentioned domain names by the Respondent has constituted a pattern of such conduct known as "cyber-

squatting", and its behavior as a whole constitutes a bad faith situation as stipulated in UDRP 4(b)(ii).

But, bad faith conditions may not be limited to the above four conditions according to UDRP, the Disputed Domain Name does not appear to have been used by the Respondent, which is in itself as evidence of bad faith. Former panels held that the fact that the respondent was not using the accused domain name to identify an active web site was, along with other evidence, probative of bad faith, like case Telstra Corp. Ltd. v. Nuclear Marshmallows WIPO D2000-0003. "Passive holding rule" established in Telstra case, and many precedents followed this rule. In Telstra case, the penal hold "[T]he concept of a domain name being used in bad faith is not limited to positive action; inaction is within the concept. That is, to say, it is possible, in certain circumstances, for inactivity by the respondent to amount to the domain name being used in bad faith." Several particular circumstances in this case which lead to passive holding have been identified: (i) the complainant's trademark has a strong reputation and is widely known, as evidenced by its substantial use in Australia and in other countries, (ii) the respondent has provided no evidence whatsoever of any actual or contemplated good faith use by it of the domain name, (iii) the respondent has taken active steps to conceal its true identity, by operating under a name that is not a registered business name., (iv) the respondent has actively provided, and failed to correct, false contact details, in breach of its registration agreement, and (v) taking into all of the above, it is not possible to conceive of any plausible actual or contemplated active use of the domain name by the respondent that would not be illegitimate, such as by being a passing off, and infringement of consumer protection legislation, or an infringement of the complainant's rights under trademark law.

The Complainant submits this case nearly meets every condition.

First, as aforementioned, the Complainant gained substantial reputation prior to the application of the disputed domain name. Also, the Respondent makes the statement "it knew of the Complainant and that the content that will be placed on the site will be related to the alleged wrongdoing by the Complainant" in the previous dispute. Therefore, it is obvious that the Respondent was aware of the Complainant and its mark before filing the registration of the disputed domain. Even in some case, some panels held that: "[R]egistration of a well-known trademark as a domain name is a clear indication of bad faith in itself, even without considering other elements." "Evidence of bad faith includes actual or constructive notice of a well-known trade mark at the time of registration of a domain name by a respondent." (zippo.uk.com transferred to Zippo lighters.) Zippo Manufacturing Company v. Paula Ellis, Personalized Occasions, WIPO D2012-0249. Similarly in HKIAC case HK-1300543, the complainant's "RACHEL ROY" mark was famous to some extents, and the evidence showed that the respondent had the knowledge of complainant and its mark. In that circumstance, the panel held that the registration of a well-known mark "RACHEL ROY" as a domain name itself is a clear indication of bad faith.

Second, although the Respondent asserted the content that will be placed on the site will be the alleged wrongdoing by the Complainant, they didn't do anything regarding to this purpose. After the disputed domain name was registered on 15 October 2017, it has not been used for website construction, and the Respondent did not express any intention to build it and use it in good faith. Until the Original Action, the Respondent only submitted several news articles in public domain, and the topic outline that will be discussed. But the

Respondent didn't provide any original articles wrote by its asserted "independent journalists", or any other evidence that they made actual effort to use the site in good faith. So, the Complainant holds, the acts cannot prevent reasonable person from believing that this is not a kind of active use.

More importantly, the Respondent provided false contact details, in breach of its registration agreement. Because the Complainant wishes to contact the respondent for solving the dispute peacefully, the Complainant decided to send a letter to the Respondent. On July 17, 2018, the Complainant sent one letter via China Express (The tracking number: CT543501060CN) to the address on the WHOIS record of the disputed name. Unexpectedly, on August 6, 2018, the sent letter was returned due to "the destination could not be found". That means the Respondent used false contact address when registered the domain name. So, the letter sent by the Complainant cannot be delivered. The false contact details have been used by the Respondent, which leads to breaching the registration agreement.

Furthermore, although the Respondent didn't sell this domain, this evidence per se cannot conclude bone fide registration and use. In recent HKIAC case HK-18010161, the webpage of disputed domain did not show any competitive business related to that Complainant, and no information on the site about selling that domain. Also, that Respondent also didn't sell that disputed domain to any third parties. But the Panel holds that, the long period of non-use can be a factor of finding bad faith, because the registration and passive holding of the disputed domain name can prevent that Complainant to register same domain at least.

Back to the circumstance in instant case, although the web page regarding to disputed domain showed "This website is not for sale", and the Respondent said the website is for public interest. This fact itself cannot prove no bad faith in registration and use. Also, under UDRP, the existence of a disclaimer cannot cure bad faith when bad faith has been established by other factors. So, the disclaimer "This website is not for sale" cannot be a decisive evidence of good faith here.

Furthermore, although the Respondent said they just want to use the disputed domain to write articles and gather information about the alleged wrongdoing of the Complainant. That is only one side of the story. First, the disputed domain name does not include any negative words, it only describes the Complainant's core brand and main business. So, the disputed domain name itself does not comply with the aim "put wrong doing of the Complainant". Besides, there is no other actual evidence to support the Respondent's statement, and no information on registered website indicating this intent. That means, the Respondent can make any kinds of explanations about the usage of the disputed domain name. To protect their domain, the Respondent can just pick any excuse to defense, such as fair use. Especially, as the Respondent already admitted, the Complainant has a strong reputation of its trade name and trademark when the Respondent registered the disputed domain. From the logic understanding, the Respondent should know the huge commercial gain between the Complainant and disputed domain, also the big commercial interest behind the disputed domain name. Under this circumstance, compared to "gather information about the alleged wrongdoing of the Complainant", the Respondent's attempt to find commercial value in some ways more conforms to the general business logic.

In sum, the bad faith of the Respondent is apparent. The Respondent registered the disputed domain name with the knowledge of the well-known Complainant and its mark, and the behavior of the Respondent is a "pattern of conduct", also the Respondent provide false information to the Registrar. Moreover, although the Respondent responded in prior case that they will use this site for "public interest", they didn't take any active actions. The Respondent just passive holds a domain in fact. In determining whether the Respondent was in bad faith, any single factor itself cannot prevail on a case. Nevertheless, the Complainant got the preponderance of evidence that Respondent registered and was using the disputed domain in bad faith.

Based on these grounds, the Complainant requests that the Disputed Domain Name be ordered to be transferred to the Complainant.

## B.    Respondent's Contentions

The Respondent admits that the Respondent maintains no trademark rights to the word "EVERGRANDE", but contends that the Respondent did not register the Disputed Domain Name for a commercial purpose. Therefore it is the Respondent's contention that trademarks would not be applicable.

Respondent denies the insinuation at Section 8(ii)(2) that its legal name somehow controls its rights. Respondent denies the insinuation at Section 8(ii)(2) that the parked page of the Respondent's site controls. This matter was adjudicated in the Original Action and Complainant provides nothing new. The only reason the parked page exists at this juncture is because, since January 2018, the matter has been in litigation. The domain remains registrar locked and has remained that way since the Original Action.

Respondent denies the argument at Section 8(iii) that the domain was registered and used in bad faith. This was adjudicated in the Original Action.

In the Original Action, the Respondent stated that in the fourth quarter of 2017, a journalist approached and wished to design websites to discuss corporate wrongdoing, including alleged wrongdoing by the Complainant. Respondent agreed to assist the journalist. Section 4(c)(iii) of the Policy states that to demonstrate legitimate use of the domain name, a Respondent can show that they are "making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or servicemark at issue." In this case, no commercial intent exists except to publish informative public interest comment about the Complainant. The only reason the content has not been published is because of multiple, repeat litigation against the Respondent. Respondent has its content ready for publication, but on the advice of legal counsel, has refrained from publishing it until the registrar lock is removed. Since February 2018, the domain has been locked for UDRP disputes, all filed by the Complainant. Under these circumstances where a Complainant files multiple, repetitive Complaints, the Respondent cannot be faulted for not publishing its website.

In the original proceeding, Respondent explained that Complainant paints a rosy picture of its reputation. However, the reality is a bit more cloudy warranting discussions by the public about some of the conduct of the Respondent. Discussion will include how Evergrande, like in this case, attacks its critics. For example, the website will discuss

Evergrande's having charges brought against Citron Research because it published allegations about bribery and dodgy accounting. Additionally, a discussion is warranted about Evergrande's inflation of the market value of its soccer team, Evergrande's breaching agreements, etc.

As with both the present and prior cases, Evergrande complained about other domain names that the Respondent maintains. Respondent attached copies of the websites where it published information in the prior case, showing that all information was non-commercial and in the public interest.

In this case, Evergrande attempts to overcome this fact by simply arguing that if the website was a legitimate discussion site, the domain would contain disparaging or negative words. There is no requirement that a website contain "negative" words inside the domain name. Indeed, if a person registered "evergrandesucks.com," Evergrande would be arguing that the mere language in the domain disparages it.

In the law review article, Consumer Gripe Sites, Intellectual Property Law, and the Use of Cease and Desist Letters to Chill Protected Speech on the Internet (Fordham Intellectual Property, Media and Entertainment Law Journal, Vol. 17, No. 4), Rachael Braswell explained that using the company name and a top level domain is common practice for "gripe sites": "Generally, consumer gripe sites can be divided into two categories. The first category consists of websites with domain names that are comprised of the trademark of the target company followed by a top-level domain name (TLD). For example, domain names such as http://www.tredmakerhomes.com,, http://www.theshopsatwillowbend.com, and http://www.bosley medical.com all include the trademark of a company followed by a top level domain name. Operators of trademark.com gripe sites specifically select the domain name to make the gripe site more easily found by Internet users who are interested in the target company's products or services. The second category of gripe sites is commonly known as sucks.com sites. This category consists of websites with domain names that are comprised of the trademark of the target company plus a pejorative term followed by a TLD. Some common and not so common pejorative terms include the following: sucks, sux, really sucks, still sucks, blows,fuck, pathetic, boycott, rip off, fraud, complaints, litigation, eats poop." Certainly, Respondent could have registered "Evergranderealestatesilencescritics.com" or "Evergrande-are-bullies.com," but the idea is for a more professional, objective discussion site rather than something that implies negativity from the get-go. Fair commentary is being sought, not simply negativity. On the other hand, to be found on the internet, the website name must readily identify the subject matter of the website. In this case, the subject matter is indeed Evergrande Real Estate Co., and the domain name is one that Complainant never chose to register despite claiming to register 84 other websites.

In a case similar to this, Walmart attempted to obtain three domains through a UDRP proceeding. The Respondent explained the purpose of the website was a non-commercial complaints website. The WIPO panel found "it particularly significant that Respondent is not in competition with Complainant, and is not using the Disputed Domain Names to its own commercial advantage; there is neither advertising nor requests for financial support on Respondent's website. Respondent has targeted its websites principally at providing a forum to share criticism of Complainant, and appears to have genuinely used them as such. That there is a significant risk of confusion as to whether the Disputed Domain Names are

affiliated with Complainant suffices to establish a lack of rights or legitimate interests in the Disputed Domain Names, but alone is not necessarily sufficient to establish that Respondent uses the Disputed Domain Names in bad faith." Wal-Mart Stores, Inc. v. UFCW International Union, Case No. D2012-1541 (WIPO).

Therefore, there exists no bad faith in this case and nothing changed since the Original Action. For these reasons, the registration and use of the domain was and is in good faith.

Respondent confirm that claim at Section 8(iii), pages 10 and 11, that the other domains were registered by it. This was raised by Complainant and admitted to by Respondent at the Original Action. However, these domain registrations were also in good faith, have not been the basis of disputes, and were known to Complainant at the time of the Original Action.

Respondent denies the claim at Section 8(iii), page 12 regarding the "false contact details." Complainant in the Original Action argued that the telephone number was incorrect simply because it did not reach a live person. Now, Complainant mailed a letter using a courier that requires a physical address, but listed Complainant's mailing address, which is its own malfeasance.

Respondent denies the claim that it acted in bad faith because, since October 8, 2017, it did not place content on the website. The prior action was filed in January 2018, adjudicated in mid-March 2018. A waiting period for litigation existed (10 days). However, ADNDRC erroneously did not publish the decision and the website remained "registrar locked." Complainant filed a second Complaint in August 2018 at HK-18010174, and then this action in December 2018. It was proper not to proceed until these issues were resolved.

Respondent denies the claim repeated at Section 8(iii), page 13, that an incorrect address was provided. Complainant used a courier requiring a physical address to mail a letter to a post-office box. The address is a mailing address, not a physical address.

Respondent confirms the claim at Section 8(iii), page 13, that it did not sell or attempt to sell the domain. Respondent denies the claim that the "long period" of non-use supports a finding of bad faith. The non-use stems from a barrage of repeated, harassing litigation by Complainant, not "bad faith."

Respondent denies the claim at Section 8(iii), page 13, that it must "include negative words" in the domain name. Respondent's goal of a website is an objective discussion, not simply an "Evergrandesucks.com" website.

## 5.   Discussion and Findings of the Panel

The Policy provides, at Paragraph 4(a), that each of three findings must be made in order for a Complainant to prevail:

i.      Respondent's domain name is identical or confusingly similar to a trademark or service mark in which Complainant has rights; and

ii.     Respondent has no rights or legitimate interests in respect of the domain name; and

iii.   Respondent's domain name has been registered and is being used in bad faith.

## A) Identical / Confusingly Similar

Based on documentary evidence in Annex 4 to the Complaint, the Complainant has shown that it has rights in the registered "EVERGRANDE" trademarks registered in China for classes 35, 36, 37, 39, 41, 42, 43 and 45 prior to the registration of the Disputed Domain Name.

By comparing the Disputed Domain Name <evergranderealestate.com> with Complainant's registered "evergrande" trademark, the Panel finds that the Disputed Domain Name is confusingly similar to the "TVB" trademark in that it incorporates the Complainant's "evergrande" trademark in its entirety as a distinct component of the domain name with the addition of the letters "realestate" after the "evvergrande" trademark of the Complainant that has been in its real estate business operations in China The Panel accepts the Complainant's submission that the Disputed Domain Name might create a confusion to an average internet user into believing that the Disputed Domain Name is associated with the Complainant.

The Panel therefore concludes that Paragraph 4(a)(i) of the Policy has been satisfied by the Complainant.

## B) Rights or Legitimate Interests

The Panel finds that the Complainant has established a prima facie case that the Respondent has no rights or legitimate interests in the Disputed Domain Name. The Complainant did not authorize the Respondent to use its registered "evergrade" trademark or to register the Disputed Domain Name; there is no evidence of the Respondent being commonly known by the Disputed Domain Name; and there is no evidence of a bona fide offering of goods or services under the Disputed Domain Name.  As stated in paragraph 2.1 of the WIPO Overview 3.0, once a complainant establishes a prima facie case in respect of the lack of rights or legitimate interests of a respondent, the respondent then carries the burden of demonstrating that it has rights or legitimate interests in the Disputed Domain Name.  Paragraph 4(c) of the Policy provides that any of the following circumstances, in particular but without limitation, if found by the Panel to be proved based on its evaluation of all evidence presented, shall demonstrate the Respondent's rights or legitimate interests to the domain name for purposes of Paragraph 4(a)(ii):

(i) before any notice to the Respondent of the dispute, the Respondent's use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a bona fide offering of goods or services; or

(ii) the Respondent (as an individual, business, or other organization) has been commonly known by the domain name, even if the Respondent has acquired no trademark or service mark rights; or

(iii) the Respondent is making a legitimate non-commercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

It is common ground that the Disputed Domain Name has been resolved to to a parking page with a passage saying that *"This website is not for sale. Informative information will be published soon. All information in the public interest."*

On totality of the evidence presented by Parties in the present action, the Panel does not accept the Respondent's contention that the Respondent did not register the Disputed Domain Name for a commercial purpose but for public interest advocacy purposes. Even if the Respondent's non-commercial purpose contention stands, the question for determination by the Panel is whether Respondent's free speech interest in the Disputed Domain Name is so compelling that it should take precedence over Complainant's trademark rights. In the view of the Panel the level of "confusion-inducement" in the Disputed Domain Name <evergranderealestate.com> is apparently sufficient to cause internet users familiar with Complainant's business in China to be uncertain as to the identity of the website operator of the Disputed Domain Name. The Panel is not convinced that Respondent's free speech interests take such significant precedence over Complainant's interest in being properly identified by the public as to cause Respondent to have a legitimate interest in the Disputed Domain Name. The Panel therefore concludes that the Respondent has not made its case of legitimate noncommercial use of the Disputed Domain Name.

Accordingly, the Panel finds none of the circumstances as set out in Paragraph 4(c) is present. The Panel concludes that the Complainant's prima facie case that the Respondent has no rights or legitimate interests in the Disputed Domain Name has not been rebutted by the Respondent.

The Panel therefore determines that the Complainant has established Paragraph 4(a)(ii) of the Policy.

## C) Registration and Use in Bad Faith

Paragraph 4(b) of the Policy provides that for the purposes of Paragraph 4(a)(iii), the following circumstances, in particular but without limitation, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith:

(i) circumstances indicating that the Respondent has registered or the Respondent has acquired the domain name primarily for the purpose of selling, renting, or otherwise transferring the domain name registration to the complainant who is the owner of the trademark or service mark or to a competitor of that complainant, for valuable consideration in excess of the Respondent's documented out-of-pocket costs directly related to the domain name; or

(ii) the Respondent has registered the domain name in order to prevent the owner of the trademark or service mark from reflecting the mark in a corresponding domain name, provided that the Respondent has engaged in a pattern of such conduct; or

(iii) the Respondent has registered the domain name primarily for the purpose of disrupting the business of a competitor; or

(iv) by using the domain name, the Respondent has intentionally attempted to attract, for commercial gain, Internet users to the Respondent's web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of the Respondent's web site or location or of a product or service on the Respondent's web site or location.

As discussed in Paragraph 4(2) above, the Panel finds that on 15 October 2107, the date of registration of the Disputed Domain Name, the Respondent also registered five other domain names: (1)< jfeholdings.com>, (2)<rockwoodholdings.com>, (3)<aichibank.net> (4)<haitongsecurities.com>, and (5) <otsukaholding.com>, which the Respondent admits.

Having carefully considered all the Parties' submissions, the Panel has no difficulty to reject the Respondent's assertion that by registering the Disputed Domain Name and the other domains, including the above 5 domains, the Respondent was using these domains for non-commercial public interest advocacy purpose only. On the totality of the evidence in the present case, the Panel considers that the message "This website is not for sale" on the parked page of the website of the Disputed Domain Name is a mere "cloak" to conceal the Respondent's cybersquatting activities.

First, the Respondent's contention that these 5 domain registrations were in good faith, presumably on the ground that they were registered by the Respondent for non-commercial public interest advocacy similar to that in respect of the Disputed Domain Name is baseless. There is no evidence of any public interest advocacy work done by the Respondent in respect of any of these domains, including the Disputed Domain Name (even allowing the Respondent's claim that the Disputed Domain Name was being "registrar locked" for a long period after the Original Action), since registration in October 2017, almost 18 months ago. The 2017 Quarter 4 journalist's story in the Respondent's case is nothing but a mere story.

Second, as discussed above, by the Respondent's own admission, the Respondent does not possess any Chinese language capability where the targets for generating public interest discussions are companies in China. With such a language handicap, how could it be a possibility for the Respondent to engage in public interest advocacy work in China? The Respondent's assertion that by registering the Disputed Domain Name was used for non-commercial public interest advocacy purpose only is nothing but a joke.

Third, none of the submissions by the Complainant in its analysis of the above 5 domains has been challenged by the Respondent except the assertion that these domains were already raised by Complainant in the Original Action which the Panel has found to be untrue.

Fourth, the Respondent's contention that these 5 domain registrations were in good faith as they have not been the basis of any disputes has no substance at all. There might be a host of speculative reasons why related brand owners of these five domains did not take any action on the domains. It might, for instance, be due to a lack of knowledge of the existence of these domains; and even if known, there might be a lack of interest to pursue their claims on the grounds of time and expenses or otherwise. This is clearly irrelevant to

the question whether the Respondent did act in bad faith by registering and using these domains.

Paragraph 3.1.2 states as follows:

> "UDRP panels have held that establishing a pattern of bad faith conduct requires more than one, but as few as two instances of abusive domain name registration. This may include a scenario where a respondent, on separate occasions, has registered trademark-abusive domain names, even where directed at the same brand owner. A pattern of abuse has also been found where the respondent registers, simultaneously or otherwise, multiple trademark-abusive domain names corresponding to the distinct marks of individual brand owners."

The Complainant makes a large number of assertions in relation to the requirement of bad faith registration and use, but the issue can be resolved on the basis of only one claim.

In the view of the Panel, there is sufficient evidence to conclude in this case on the basis of paragraph 4(b)(ii) of the Policy. Here there is clear evidence that the Respondent did almost simultaneously on the same date register multiple domain names directed against the Complainant in China and 5 other well-known brand owners, Rockwood Holdings, Inc. in the US, Aichi Bank in Japan, Haitong Securities Co. Ltd. in China, and Otsuka Holdings Co., Ltd. in Japan. These domain names that involve company names and/or businesses, services and generic words in their designs obviously involves a pattern of conduct directed against the Complainant and all these other well-known companies in different parts of the world, stopping the Complainant and these other companies from reflecting their marks in corresponding domain names. It was a concerted effort of cybersquatting by the Respondent. The Panel concludes that paragraph 4(b)(ii) is made out in the present case.

Accordingly, evidence of bad faith registration and use of the Disputed Domain Name is established in this case. The Panel therefore finds that the Complainant has established Paragraph 4(a)(iii) of the Policy.

Based on the above findings, the Panel rejects the Respondent's PETITION TO FIND REVERSE DOMAIN NAME HIJACKING PURSUANT TO UDRP RULE 15(E)

## 6. Decision

For all the foregoing reasons, in accordance with Paragraph 4(a) of the Policy and Article 15 of the Rules, the Panel orders that the Disputed Domain Name <evergranderealestate.com> be transferred to the Complainant.

Raymond HO
Sole Panelist of the Panel
19 March 2019