# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

SERGIO SANCHEZ,

        Plaintiff,               Civil No.

      v.

EVERGRANDE REALESTATE GROUP
CO., LTD.,

        Defendant,

CENTRAL AMERICAN DOMAIN
AUTHORITY, LTD.,

      Nominal Defendant.

FILED
LODGED
RECEIVED

**MAIL**

MAR 27 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

**19-CV-    469** BJR

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Sergio Sanchez files this Complaint against Defendant Evergrande Realestate Group Co., Ltd., and nominal defendant Central American Domain Authority Ltd.,and in support avers the following:

## I. NATURE OF THE CASE

1. This case is brought pursuant to 15 U.S.C. 1114(2)(D)(iv)-(v) and for declaratory relief pursuant to 28 USC 2201 to establish that Plaintiff's registration and use of the internet domain name <evergranderealestate.com> is not unlawful under the Anticybersquatting Consumer Protection Act (15 U.S.C. 1125(d)("ACPA") or otherwise under the Lanham Act (15 U.S.C. 1051, *et seq.*); to prevent the transfer of the Domain Name to Defendant, which was ordered on March 19, 2019, after the defendant filed seriatim proceedings against the Plaintiff and the Central American Domain Authority Ltd., to establish that the UDRP process undertaken, and the resulting decision of a panel in a third administrative proceeding was in violation of Plaintiff's contractual rights, to enjoin the

1    defendant from taking any further action against Plaintiff relating to the domain name,

2    and to recover fees, costs, and damages as set forth herein.

3    ## II. JURISDICTION AND VENUE

4    2.  This Court maintains jurisdiction over this action pursuant to 28 USC 1331 because this

5    cause arises under 15 USC 1114 in that Plaintiff is the joint registrant of a domain name

6    that has been suspended, locked, and ordered transferred under a policy provided by the

7    registrar Epik Inc. thereof relating to an alleged conflict with a trade or service mark

8    claimed by Defendant Evergrande Realestate Group Co., Ltd. ("Evergrande"). *See*

9    *Dluhos v. Strasberg*, 321 F3d 365 (3rd Cir. 2003).

10   3.  Personal jurisdiction over Defendant Evergrande exists in the Western District of

11   Washington because Evergrande expressly and voluntarily agreed to submit to the

12   jurisdiction of this Court when it initiated an administrative proceeding pursuant to the

13   UDRP concerning the domain name. Specifically, Defendant voluntarily and expressly

14   agreed in its third UDRP complaint to submit to the jurisdiction of the State of

15   Washington in connection with any legal action in any way related to the UDRP

16   proceeding. Moreover, by filing a UDRP complaint, Evergrande stipulated to be bound

17   by the following provision: "... the Complainant will submit, with respect to any

18   challenges that may be made by the Respondent to a decision by the Administrative

19   Panel to transfer the domain name that is the subject of this Complaint, to the

20   jurisdiction of the courts at the location of the principal office of the concerned

21   registrar," to wit, Washington State. In addition, by seeking a directive for Epik Inc., in

22   the State of Washington, to expressly take the domain name registered by Plaintiff and

23   transfer it to itself, Evergrande interfered with property and contractual rights occurring

24   in the State of Washington.

4. Evergrande directed activity into this judicial district with the intent to deprive Plaintiff of rights under a contract having a situs in this judicial district. Indeed, by seeking a directive for Epik Inc. in the State of Washington to expressly take the domain name registered by Plaintiff and transfer it to itself, Evergrande Real Estate Group Co. Ltd. interfered with property rights occurring in the State of Washington.

5. Venue is proper in this Court pursuant to 28 USC 1391(b)(1) and (2).

### III. PARTIES

6. Plaintiff Sergio Sanchez ("Sanchez") is an individual who is a citizen of the Republic of Nicaragua. Sanchez conducts business in both Nicaragua and Costa Rica. For the purpose of this action and to obtain documents and notices in a timely manner, Sanchez appointed an agent for receipt of documents: ABC Agents, PO Box 37635, Suite 10287, Philadelphia PA 19101.

7. Defendant Evergrande Realestate Group Co. Ltd. ("Evergrande"), upon information and belief, is a corporation located at Excellence Houhai Financial Center, No. 1126, Haide Third Road, Nanshan District, Shenzhen City, China.

8. Defendant Central American Domain Authority Ltd. ("CADA") is a Colorado corporation that conducts business in Nicaragua, Costa Rica, Panama, and Honduras. It is named as a nominal defendant as Sanchez and CADA jointly owned the domain name and because CADA was named as the respondent in the UDRP action, although all filings made in the UDRP action listed both Sanchez and CADA as respondents.

### IV. FACTS

9. On or about August 11, 2014, Evergrande Group Co. Ltd. of Shengan-Zone China applied for and, on August 4, 2015, received an approval on the trademark "Evergrande Spring" in the United States.

10. On or about September 3, 2014, Evergrande Group Co. Ltd. of Shengan-Zone, China, applied for over fifteen (15) trademarks for the term "Evergrande Group" and "D Evergrande Group" with the United States Patent and Trademark Office.  However, on or about May 8, 2017, Evergrande Group Co. Ltd. abandoned its trademark applications for "Evergrande Group" and "D Evergrande Group."

11. No trademark exists or ever existed in the United States for the term "Evergrande," "Evergrande Real Estate," "Evergrande Real Estate Group," or "Evergrande Group" by defendant Evergrande or anyone else.

12. On or about April 18, 2015, a non-party Fekade Maelaku of Dafilo Brokerage registered the internet domain name <evergrandrealestate.com> and placed a monetizing link page on its parked page.

13. On or about October 15, 2017, Plaintiff along with CADA jointly registered the domain name <evergranderealestate.com> along with the names of several other companies after being retained by a freelance writer interested in forming a public interest discussion site relating to the companies for consumers and others to air grievances to be investigated (discussion forums), a so-called "gripe site."

14. As the content for <evergranderealestate.com> was not ready for publication, Plaintiff parked the site with the domain registrar, Epik.com.

15.  Epik.com's parked pages do not display advertisements resulting in revenue for the domain name holder.

16. Epik.com's parked pages allow the domain name holder to display only two lines of text.

17. For Plaintiff's parked page, he inserted "**This website is not for sale.** Informative information will be published soon.  All information in the public interest."

1    18. When publishing the website, Plaintiff listed accurate contact information.

2    19. The telephone number Plaintiff listed constitutes a valid Skype-telephone number based

3         in Hong Kong which worked at the time of registration and presently.

4    20. The mailing address Plaintiff listed, Apartado 599-1250, Escazu, Costa Rica, constitutes

5         a post office box located at the Escazu post-office in the Province of San Jose Costa

6         Rica. The address received ordinary postal mail at the time of registration and

7         continues to constitute a valid mailing address.

8    21. The Escazu mailing address, being a post office box, does not receive courier packages

9         such as those from Federal Express. Rather, it constitutes a "postal address" for

10        receiving mail delivered by the government postal services.

11   22. This complies with the rules set forth by the Internet Corporation for Assigned Names

12        and Numbers (ICANN) regarding accurate "whois" registration data for domain

13        names, which is incorporated into Plaintiff's contract with Epik.com .

14   23. Specifically, the rules require the registrar to collect the "3.3.1.6 The name and postal

15        address of the Registered Name Holder."

16   24. Neither the ICANN rules nor the Epik.com registration agreement require the domain

17        name holder to provide a physical address for courier delivery of communications.

18   25. On December 6, 2017, Defendant Evergrande, through its agent, sent an email to

19        Plaintiff using the email address <terroir.zhang@qq.com>, with the title

20        "evergranderealestate.com," with the content, "Hello, may I ask if this domain name is

21        for sale, I am interested in collecting."

22   26. Plaintiff did not reply to Defendant Evergrande's attempt to buy the domain name from

23        him.

24   27. On January 1, 2018, Defendant Evergrande's agent send an email from

1    <18523397860@qq.com>, with the title "wishs from china," with the content, "Hello!

2    Happy new year and have a good day."

3    28. On January 28, 2018, Defendant Evergrande initiated a domain name dispute pursuant

4    to ICANN's UDRP, as incorporated into the Epik.com registration agreement.

5    29. By doing so, Defendant Evergrande caused the domain name to be "registrar locked"

6    and unable to be transferred by the Plaintiff.

7    30. Defendant Evergrande filed its UDRP case with the Asian Domain Name Dispute

8    Resolution Center in Beijing, China, and opted for an English language proceeding.

9    The ADNDRC assigned case number CN-1801135 to the proceeding.

10   31. Defendant Evergrande alleged that it maintained the trademark "Evergrande" and

11   "Evergrande Real Estate," that the domain name <evergranderealestate.com> was

12   similar to its trademark and confusing to consumers, and that the domain name was

13   registered in bad faith.

14   32. Defendant Evergrande falsely alleged that Plaintiff listed a false telephone number,

15   breaching the agreement with Epik.com.

16   33. Even though Plaintiff only owned the website for a few months before Defendant

17   Evergrande filed its action, it averred that not having website content constituted

18   "passively holding" the domain name in bad faith.

19   34. Plaintiff and CADA answered the UDRP Complaint and advised the panel that it

20   registered other domain names along with <evergranderealestate.com> for the purposes

21   of establishing several public interest "gripe sites," provided evidence that the telephone

22   number was indeed accurate, and provided examples of the Plaintiff's other "gripe

23   sites."

24   35. On March 8, 2018, a panelist in the case determined that Defendant Evergrande did

1    maintain trademarks and rights to the name <evergranderealestate>, that the domain

2    name <evergranderealestate.com> was indeed similar, but that Defendant Evergrande

3    failed to prove that the domain name was registered in bad faith because it appeared

4    plausible that the purpose of the registration was a gripe site.

5    36. The panelist specifically chose to focus on the <evergranderealestate.com> website and

6    not any other websites registered by Plaintiff despite the invitation to do so.

7    37. The panelist noted in CN-1801135 that the UDRP does not prevent either party from

8    submitting its dispute to a court of competent jurisdiction for independent resolution of

9    the issues "if the case involves more complicated issues that cannot be more fully

10    examined or investigated in the expedited proceeding under the Policy and the Rules,

11    the parties have all the freedom to resort to litigation, arbitration or any other dispute

12    resolution mechanism." Indeed, the ICANN rules specifically state that the UDRP

13    proceeding would be superseded by a court proceeding and invalidated automatically if

14    filed within 10 days of any UDRP decision.

15    38. In connection with the UDRP case CN-1801135, Plaintiff incurred legal fees.

16    39. On March 13, 2018, the CN-1801135 decision denying Defendant Evergrande's UDRP

17    complaint was finalized and served on the registrar and the parties.

18    40. Thereafter, Plaintiff waited a reasonable amount of time, *i.e.,* 6 months, for the

19    Defendant Evergrande to proceed to a court of competent jurisdiction before he

20    developed the website.

21    41. In October 2018, Plaintiff proceeded when it did not appear legal action was imminent

22    from Evergrande.

23    42. Therefore, Plaintiff logged into his account at Epik.com with the intention of changing

24    the name servers as to the website so that content could be placed and the parked page

1      removed.

2      43. Much to Plaintiff's surprise, there appeared to be a "registrar UDRP lock" on the

3          domain name.

4      44. Plaintiff retained an attorney to contact Epik.com to determine why it did not remove

5          the UDRP lock.

6      45. Epik.com advised Plaintiff's attorney that "[I]t seems another UDRP was filed against

7          this domain during October. Therefore Epik was required, based on ICANN guidelines,

8          to lock the domain."

9      46. Plaintiff's attorney notified Epik that Plaintiff did not receive service of the complaint.

10         Epik.com advised Plaintiff's attorney that it also did not receive service of the

11         complaint.

12     47. Plaintiff's counsel attempted to locate the decision of the UDRP Panel and it

13         mysteriously was not published on the website of the ADNDRC. Instead, a completely

14         different case decision appeared with the same docket number.

15     48. Oddly, the ADNDRC Beijing did not publish the case decision online until after

16         Plaintiff's counsel complained.

17     49. Plaintiff's counsel, through a dialogue with Epik.com, learned that the ADNDRC's

18         Hong Kong office (administered by a completely different arbitration company than that

19         which operates ADNDRC Beijing) notified the registrar Epik that Defendant

20         Evergrande initiated a second proceeding against Plaintiff and CADA at HK-18010174

21         approximately on October 10, 2018.

22     50. The ADNDRC took no action to notify Plaintiff or CADA of the proceeding.

23     51. After repeated inquiries and complaints to the ADNDRC, on October 29, 2018,

24         Plaintiff's attorney received the following email: "Domain name case - Procedure Issue

1    Dear Sirs, Please note that ADNDRC Hong Kong office was first made aware of the

2    existence of an earlier proceeding at ADNDRC on 23 October 2018, by our

3    communication with Ms. Karla Corea, Counsel for the Respondent Central American

4    Domain Authority Ltd.. By allowing the proceedings to initiate, we understand that the

5    Respondent meant that the only step taken by ADNDRC Hong Kong office was to send

6    the Registrar the verification request in accordance with Rule 4 of Rules for Uniform

7    Domain Name Dispute Resolution Policy (the "Rules"), which allows the Registrar to

8    verify and confirm that a Lock of the domain name has been applied. Such step is

9    usually taken before any administrative compliance review is conducted, and far before

10   the Notice of Complaint is served on the Respondent. Now that we have been made

11   aware of the existence of an earlier decision rendered by an ADNDRC panelist, we

12   consider that we are in a position to discontinue the case.  We ask the Complainant to

13   provide comment on or before 3 November 2018. If we do not hear from the

14   Complainant by then, we shall discontinue the administration of the case proceeding.

15   Best regards, ADNDRC (Hong Kong Office)."

16   52. Neither Plaintiff, CADA, nor their legal counsel received any further notice about the

17       case.

18   53. Based on information, Defendant Evergrande did not file a timely objection to the

19       decision to discontinue the case as duplicative.

20   54. Notwithstanding that Plaintiff's agreement with Epik.com and ICANN rules only

21       provide for a single binding proceeding, and despite the UDRP Panel making it clear

22       that the proper remedy would be a court proceeding, Defendant Evergrande filed yet a

23       third UDRP action before the ADNDRC's Hong Kong office on December 8, 2008,

24       resulting in the lock being retained on the domain name.

55. The ADNDRC's Hong Kong office notified Plaintiff of the Complaint on December 12, 2019, which was docketed at Case No. HK-18010195.

56. Plaintiff and CADA objected to ADNDRC's Hong Kong office that where multiple cases are filed, under UDRP Policy 4(f), the cases should be consolidated and that the decision as to whether to consolidate the cases must be decided by the original UDRP panel.  In accordance with UDRP Policy 4(f), Plaintiff also served the original UDRP panel by providing copies of the objection and requests to consolidate to the Beijing Office of the ADNDRC.

57. On February 12, 2019, ADNDRC's Hong Kong office made an unsigned decision denying the request to consolidate.   The unknown person at ADNDRC wrote, "Having considered the circumstances of these matters, including the provisions of Uniform Domain Name Dispute Resolution Policy (the "Policy"), we wish to inform the parties that we are not in a position to accede to the Respondent's the first request. The Case Manager will shortly appoint a Panelist for the second matter and the third matter. Should you have any questions, please contact us.  Thank you for your attention. Yours faithfully, ADNDRC (Hong Kong Office) ."

58. UDRP rules issued by ICANN, incorporated into the Epik.com contract, do not provide for any jurisdictional decision to be made by anonymous case administrators.  On the contrary, UDRP Policy 4(f) specifically provides jurisdiction to the first UDRP Panel to make the decision.

59. During the period when Plaintiff objected to the jurisdiction over the third UDRP action against it, in contravention of the agreement with Epik.com that adopted ICANN dispute rules providing for a binding "proceeding," not multiple proceedings, Defendant Evergrande stated that it filed the third action because it maintained new evidence.

1

60. Defendant Evergrande's new evidence was that the Plaintiff allegedly provided a false address simply because a courier in China that contracted Federal Express could not deliver a letter since it was a Post Office Box, not a physical address.

61. Defendant Evergrande's new evidence also consisted of the fact that Plaintiff registered six other domain names-- even though Plaintiff advised the first UDRP panel that several domain names were registered on the same day for similar purposes.

62. Defendant Evergrande admitted in the proceeding that Plaintiff registered the other domain names on the same date he registered <evergranderealestate.com>, but stated that it did not "find them" at the time of the original complaint, "Although the Respondent already registered these domains above at the time of the original case, the Complainant did not find them until the final complaint."  Evergrande did not advise what steps it took to find them before filing the original proceeding.

63. On March 19, 2019, a new UDRP panel took jurisdiction of the case and found that the "new evidence" allowed reconsideration of the prior decision.

64. The UDRP panel then disregarded the findings of the prior UDRP panel.

65. The new UDRP panel found no issue with the forum shopping of Defendant Evergrande first filing in Beijing then, after having a negative decision, filing in Hong Kong.

66. The new UDRP panel did not discuss the second UDRP action where Defendant Evergrande maintained an opportunity to provide a reason why it was filing a second action, but apparently failed to do so.

67. The new UDRP panel disregarded Paragraph 4(f) of the UDRP policy that clearly states, "In the event of multiple disputes between [the respondent] and the a complainant, either [the respondent] or the complainant may petition to consolidate the disputes

1          before a single Administrative Panel.  This petition shall be made to the first

2          Administrative Panel appointed to hear a pending dispute between the parties...."

3     68. The new UDRP panel simply stated that since the original UDRP proceeding

4          terminated, the original Panelist became "functus officio" notwithstanding that the

5          UDRP rules do not provide any jurisdiction for a second proceeding at all.

6     69. The entire purpose of the policy is to avoid forum shopping and multiple, inconsistent

7          decisions.  Therefore, if the single authorized proceeding terminated, and the panelist

8          became "functus officio," preventing consolidation, then clearly the ADNDRC lacked

9          jurisdiction over the third UDRP proceeding.

10    70. Moreover, the UDRP policies, which are part of a contract between Epik.com and

11         Plaintiff, provide only for a "proceeding," not "proceedings," meaning that without

12         consolidation, there exists no jurisdiction to maintain a second case or transfer the

13         domain.

14    71. The new UDRP panel disregarded evidence about the letter sent by Defendant

15         Evergrande and found it not to be new evidence.

16    72. However, the new UDRP panel found that the other domains registered did constitute

17         new evidence because a privacy service was used to conceal ownership.

18    73. This "privacy service" theory was not raised by Defendant Evergrande, but *sua sponte*

19         by the panelist.

20    74. The reason Defendant Evergrande did not raise this contention was because the Plaintiff

21         never used a privacy service to register any domains and the information was publicly

22         available at the time of the original proceeding.

23    75. The Plaintiff used the same exact registration data as in the registration of

24         <evergranderealestate.com>.  The privacy service – a free service offered by the domain

1      registrar – was placed, erroneously and not with Plaintiff's consent, in 2019-- after the

2      first case concluded.

3   76. Moreover, Plaintiff himself advised the first panel of the registration of other domains

4      and the opinion and decision of the first UDRP panel specifically chose to disregard the

5      evidence and focus solely on <evergranderealestate.com>.

6   77. Indeed, Plaintiff originally wanted the panel to look at his other domain names and

7      websites because they included the type of "gripe site" protected, fair use, public

8      interest content.

9   78. The new UDRP panel found that the fact that Plaintiff did not put material onto the

10     website constituted evidence of bad faith intent notwithstanding that the domain has

11     been under constant litigation since January 2018.

12  79. The new UDRP panel then concluded that the registration of <evergranderealestate.com>

13     was in bad faith because Plaintiff also registered five (5) other domain names.

14  80. The new UDRP panel held that the statement on the website that it was not for sale "is a

15     mere 'cloak' to conceal the Respondent's cybersquatting activities" because content was

16     not placed on the other unrelated registered websites. *But see* First UDRP decision

17     refusing to look at the Plaintiff's content on developed sites.

18  81. In the first UDRP proceeding, the UDRP Panel held that Defendant Evergrande's

19     evidence would be struck from the record because it was not translated into Chinese.

20  82. However, the new UDRP panel dove into a discriminatory basis for finding bad faith

21     registration-- suggesting that only Chinese people, who understand the Chinese

22     language, have a right to create a discussion site about Chinese companies.  The new

23     UDRP panel wrote, "By the Respondent's own admission, the Respondent does not

24     possess any Chinese language capability where the targets for generating public interest

1    discussions are companies in China.  With such a language handicap, how could it be a

2    possibility for the Respondent to engage in public interest advocacy work in China?

3    The Respondent's assertion that by registering the Disputed Domain Name was used for

4    non-commercial public interest advocacy purpose only is nothing but a joke."

5  83. Finally, despite the first UDRP panel refusing to look at the content and purpose of the

6    other domain names registered by Plaintiff, the new UDRP panel faulted Plaintiff for

7    not explaining why he did not take any action on the domains.  Regardless, the *stare*

8    *decisis* of the issue from the first UDRP panel was that the evidence of the Plaintiff's

9    publishing on the other websites was not relevant to <evergranderealestate.com>.

10  84. Based on this third UDRP action, the panelist directed the transfer of the domain name

11    <evergranderealestate.com> to Defendant Evergrande.

12  85. Without filing this action ten (10) business days from the proceeding, the Plaintiff

13    would lose the domain name he registered in good faith to place non-commercial

14    content on.

15  **COUNT I – Reverse Domain Hijacking Under 15 USC 1114(2)(D)(iv)-(v)**

16  86.  Paragraphs 1 through 85 are hereby incorporated by reference as if fully set forth again.

17  87. Almost immediately upon registering the domain name <evergranderealestate.com>,

18    Defendant Evergrande attempted to trick Plaintiff into offering the domain name as

19    being for sale in an effort to dupe it into appearing to be a cybersquatter.

20  88. Plaintiff's domain name has been locked beyond Plaintiff's full enjoyment of the

21    benefits of registration thereof in consequence of the false statements made by

22    Defendant Evergrande under a dispute policy followed by domain registrar Epik.com

23    and the filing on multiple, seriatim proceedings not authorized by the UDRP or the

24    contract between Plaintiff and Epik.com.

89. Plaintiff has provided Defendant Evergrande with notice of this action.

90. Plaintiff has incurred costs, including, without limitation, attorneys fees in the three seriatim proceedings, in seeking to transfer the domain name.

91. The domain name has been ordered transferred, and would be transferred to Defendant Evergrande but for this action.

92. All the while, Defendant Evergrande allows similar domain names such as <evergrandrealestate.com> to exist and sell ads without interference.

93. Defendant Evergrande's actions – especially the second and third action – against Plaintiff have been in bad faith as it knew that the Plaintiff's sole intent is to discuss the activities of Defendant Evergrande in a public forum.

**COUNT II – Declaratory Relief 28 USC 2201, Non-Violation of Lanham Act and ACPA**

94. Paragraphs 1 through 93 are hereby incorporated by reference as if fully set forth again.

95. Plaintiff has not sought to profit in any way from registration and use of the domain name <evergrandrealestate.com> and has not intended to profit in bad faith from any trade or service mark.

96. Plaintiff specifically did not respond to Defendant Evergrande's attempts to trick it into offering the domain for sale.

97. Based on information, Defendant Evergrande does not engage in interstate commerce in the United States of America, where Plaintiff registered his domain name, in connection with any goods or services using "Evergrande" as a trademark.

98. Indeed, it appears that a company Evergrande Group Co. Ltd. of China specifically and voluntarily abandoned its trademark registration for "Evergrande Group" and "D Evergrande Group," retaining only "Evergrande Springs" as a trademark in the United States.

99. Defendant Evergrande does not employ "Evergrande" as a trade or service mark under the Lanham Act.

100.    Defendant Evergrande does not own a registration of "Evergrande" as a trade or service mark under the Lanham Act.

101.    Defendant Evergrande's claimed marks are not famous in the United States under the Federal Antidilution Act, 15 USC 1125.

102.    Plaintiff has conducted no activities outside of the United States concerning the domain name.  Rather, Plaintiff only placed an English language notice that the domain is not for sale and that public interest information would be forthcoming.

103.    Plaintiff's purchase in registering the domain name related solely to create an English language discussion site about international manipulation by Evergrande Real Estate Group.

104.    Plaintiff's planned use of the domain name constitutes fair use.

105.    Plaintiff's planned use of the domain name within the United States is protected by the First Amendment to the United States Constitution.

106.    Plaintiff reasonably believes that his registration and use of  the domain name <evergranderealestate.com> was in good faith, for fair use, and was in a manner lawful under the Lanham Act and the Anticybersquatting Consumer Protection Act.

107.    There is an actual controversy with respect to whether Defendant Evergrande is entitled to transfer of the Domain Name based on any rights under the ACPA or Lanham Act.

108.    In the absence of a declaration from this Court, Epik.com Inc. will transfer the domain name to the control of Defendant Evergrande and Plaintiff will suffer immediate and irreparable harm.

109.    Plaintiff's registration and use of the domain name does not, and is not likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Plaintiff with Defendant Evergrande, or as to the origin, sponsorship, or approval of Plaintiff's goods, services, or commercial activities by Defendant Evergrande because the only content that will be placed on the website will be public interest commentary, investigations, and information that will be clearly marked as not originating from Defendant Evergrande.

110.    Plaintiff's registration and use of the domain name do not misrepresent the nature, characteristics, qualities, or geographic origin of Defendant Evergrande's goods, services, or commercial activities.  Rather, the website will merely discuss the activities of Defendant Evergrande and alleged wrongdoing.

**COUNT III – Tortious Interference**

111.    Plaintiff incorporates and realleges paragraphs 1 through 110 as if fully set forth again.

112.    When registering the domain name <evergranderealestate.com>, the Plaintiff was forced to agree to a provision to allow third parties to file a single UDRP complaint proceeding.

113.    Nowhere in the contract with Epik, or the agreement to participate in the UDRP proceeding, did Plaintiff agree to participate or defend in a second or third UDRP case.

114.    In December 2017, Defendant Evergrande attempted to dupe Plaintiff into offering the domain name <evergranderealestate.com> for sale in an effort to seize the domain name

115.    In early 2018, Defendant Evergrande initiated proceedings under the UDRP and provided false information about Plaintiff stating that he provided a false telephone

1      number in an effort to seize the domain name <evergranderealestate.com>.  At all times

2      material, including the present time, the same telephone number works and is available

3      for use.

4      116.    In the proceeding, Evergrande accused Plaintiff of registering the domain in bad

5      faith.

6      117.    The proceedings terminated in Plaintiff's favor.

7      118.    Three months later, Defendant Evergrande decided to set up Plaintiff by sending

8      a letter to its published post office box using a courier that subcontracts to Federal

9      Express.  Federal Express cannot deliver to post office boxes in Costa Rica just as they

10     do not deliver express letters to post office boxes in the United States or Canada.

11     119.    In October 2018, Defendant Evergrande initiated a second UDRP proceeding

12     against the Plaintiff.

13     120.    Neither Plaintiff's agreement with Epik.com nor the ICANN UDRP rules

14     provide that a second proceeding, appeal, petition for reconsideration, etc. may be filed.

15     121.    The filing of the second unauthorized UDRP action caused the domain name to

16     be locked a second time without notice to Plaintiff.

17     122.    Plaintiff incurred more legal fees hiring an attorney to investigate the reasons the

18     domain was locked.

19     123.    After Plaintiff's attorney objected, Defendant Evergrande was given an

20     opportunity to respond to the fact that it filed a second, unauthorized by contract

21     proceeding against Plaintiff.

22     124.    Based on information, Defendant Evergrande did not respond to the forum's

23     notice to it and abandoned the second action leaving Plaintiff stuck with a legal bill and

24     a locked domain.

125.     In December 2018, Defendant Evergrande filed a third UDRP case notwithstanding that Plaintiff's contract with Epik and incorporation of ICANN rules only providing for a single UDRP proceeding.

126.     Defendant Evergrande provided false information to the UDRP panel that it did not know that Plaintiff maintained other domain names (*but see* First Panel decision discussing additional domain names).

127.     Defendant Evergrande provided misleading information that Plaintiff provided a false address in contravention of its agreement with Epik even though Plaintiff maintained a valid post office box, but it simply does not accept deliveries from couriers such as Federal Express.

128.     Defendant Evergrande's misrepresentations and seriatim filings were made for the purpose of inducing a misapplication of the dispute policy of Plaintiff and Epik's domain registration contract, to cause breach thereof in that the UDRP was, after two unsuccessful proceedings, misinterpreted and misapplied in the course of the UDRP Proceeding thereby causing a breach of Plaintiff's domain registration contract.

129.     Moreover, Defendant Evergrande's actions caused Epik to erroneously believe that, even after Plaintiff prevailed on the only authorized UDRP proceeding, it needed to lock the Plaintiff's registration of the domain and, absent the filing of this action, transfer the domain name to Defendant Evergrande.

130.     When registering the domain name, Plaintiff was forced to agree to a specific registration agreement that incorporated by reference the UDRP as written.

131.     Had Plaintiff sought the registration services of any other registrar, the registration agreement may different but the UDRP would still be incorporated within the registration agreement forming a part of the contract.

132. The registration agreement, at least to the extent it incorporated by reference the UDRP is a contract of adhesion.

133. The UDRP was created and written in 1999. The language of the UDRP has not been modified materially.

134. The declared intention of the UDRP was to address those disputes involving a narrow class of cases in which the domain registration clearly constituted cybersquatting.

135. The UDRP was created according to the guidelines of the "THE MANAGEMENT OF INTERNET NAMES AND ADDRESSES: INTELLECTUAL PROPERTY ISSUES," Final Report of the WIPO Internet Domain Name Process April 30, 1999, issued by the World Intellectual Property Organization ("WIPO Final Report").

136. The WIPO Final Report included the following caveat regarding the intent and operation of the UDRP: (34). It is further recognized that the goal of this WIPO Process is not to create new rights of intellectual property, nor to accord greater protection to intellectual property in cyberspace than that which exists elsewhere. Rather, the goal is to give proper and adequate expression to the existing, multilaterally agreed standards of intellectual property protection in the context of the new, multijurisdictional and vitally important medium of the Internet and the DNS that is responsible for directing traffic on the Internet. The WIPO Process seeks to find procedures that will avoid the unwitting diminution or frustration of agreed policies and rules for intellectual property protection. (35). Conversely, it is not intended that the means of according proper and adequate protection to agreed standards of intellectual

1    property should result in a diminution in, or otherwise adversely affect, the enjoyment

2    of other agreed rights, such as the rights guaranteed in the Universal Declaration of

3    Human Rights.

4    137.    Notwithstanding the original narrow intent of the UDRP, it has been the subject

5    of expansion undertaken as a result of continued panel decisions in which panelists

6    impose conflicting personal views of the UDRP.

7    138.    To prevail in a UDRP involving a .com domain name, the complainant must

8    allege and provide that the "the domain name has been registered and is being used in

9    bad faith."

10   139.    UDRP Policy 4(c) provides that a UDRP will be overcome "if you are making a

11   legitimate non-commercial or fair use of the domain name, without intent for

12   commercial gain to misleadingly divert consumers or to tarnish the trademark or service

13   mark at issue."

14   140.    Improper application of the UDRP, and allowing complainants to file seriatim

15   proceedings not anticipated or expressly authorized by the domain registration

16   agreement or ICANN's UDRP provisions creates a continuing uncertainty as to

17   Plaintiff's contractual rights and obligations under the relevant registration agreement.

18   141.    Allowing complainants to file proceedings every time they locate new evidence,

19   even evidence that is self-created or that was in existence at the time, when such

20   seriatim proceedings are not authorized by the UDRP, are not agreed upon in the

21   registration contract, all while disallowing a respondent from having any ability to

22   reopen a proceeding for new evidence, creates a situation where a domain registrant can

23   never count on having a final decision made in his favor.

24   142.    Allowing complainants, but not respondents, to forum shop by using different

1   offices, and thus different panelists, when filing second and third UDRP proceedings-- a

2   procedure not authorized by the registration contract, creates an uncertainty for domain

3   registrants.

4   143.   Filing second and third complaints using different offices, as Defendant

5   Evergrande did, and thus guaranteeing a different panelist, creates an uncertainty to

6   domain registrants.

7   144.   Improper use of and application of the UDRP to provide for remedies in factual

8   situations not provided for in the UDRP subjects Plaintiff, and indeed any domain name

9   registration, to a continual unilateral amendment to the provisions of the relevant

10   registration agreement by a party that is not a party to the registration agreement.

11   145.   Contracts are to be interpreted according to the plain meaning of the terms

12   thereof. Absent legally recognized exceptions, contracts are to be interpreted using the

13   language contained therein.

14   146.   Defendant Evergrande's representations, and filing seriatim complaints not

15   authorized by the contract with Epik, were done for the purpose of inducing a

16   misapplication of the terms of Plaintiff's registration contract, resulting in the breach of

17   the contract.

18   147.   That is, despite Plaintiff never agreeing to be subject to seriatim complaints

19   under the UDRP, but only agreeing to be bound by a single proceeding, Epik stands

20   ready to transfer the domain name to Defendant Evergrande.

21   148.   Defendant Evergrande knew the terms of the contract between Epik and Plaintiff

22   and knew the UDRP provided for only a proceeding.

23   149.   Defendant Evergrande's actions intentionally induced Epik to repeatedly lock the

24   domain name in breach of the contract by filing seriatim proceedings not authorized

1    under the UDRP.

2    150.    Defendant Evergrande's actions intentionally induced Epik to agree to transfer

3        the domain name to Plaintiff based on the third, unauthorized by contract, UDRP

4        proceeding and decision.

5    151.    Defendant Evergrande's purpose was improper and done through improper

6        means.

7    152.    The breach of contract by Epik caused damages to the Plaintiff including having

8        to pay money to retain legal counsel to investigate why the domain name was locked a

9        second time and to defend against the improperly filed second and third proceedings,

10       and having its domain name locked for a prolonged period of time, including the

11       present time.

12   153.    The proximate cause of the damages to Plaintiff were from Defendant

13       Evergrande's tortious interference with contractual relations.

14                          **COUNT IV – Conversion**

15   154.    Paragraphs 1 through 153 are hereby incorporated by reference as if fully set

16       forth again.

17   155.    Plaintiff, by registering the domain name <evergrandrealestate.com> for the

18       purpose of creating a discussion board about Defendant Evergrande's activities,

19       received a property right in the name.

20   156.    By filing seriatim UDRP cases until it found a panelist that agreed with it,

21       Defendant Evergrande has impaired Plaintiff's possession and control of the domain

22       name.

23   157.    Defendant Evergrande continues to willfully exert dominion over the domain

24       name.

1         158.       Absent a declaration from this Court, Defendant Evergrande will continue to

2         dominion over the domain name and wrest all rights in the domain name from Plaintiff

3         for Defendant Evergrande's use thereof.

4  WHEREFORE, Plaintiff Sergio Sanchez respectfully demands that this Court: (1) Declare that

5  Defendant Evergrande has no trademark rights that are subject to protection in the United States as to

6  <evergranderealestate.com>; (2) Declare pursuant to 15 USC 1114(2)(D)(iv)-(v)  that Plaintiff is

7  entitled to registration, ownership, and use of the domain name <evergranderealestate.com>; (3)

8  declare that Plaintiff's registration and intended use of the domain name to create a discussion site is

9  lawful, fair use, and protected by the First Amendment to the United States Constitution and does not

10  infringe on any trade or servicemark right Defendant Evergrande may claim in the United States; (4)

11  Declare that Defendant Evergrande attempted to unlawfully interfere with Plaintiff's rights and

12  expectations under the domain registration agreement with Epik and has induced a breach thereof

13  through the misapplication of the dispute resolution policy; (5) Declare that the domain name

14  registration agreement and the policies of the UDRP do not provide for an authorized contractual

15  remedy allowing a second or third proceeding after a complainant's first action is denied; (6) Declare

16  that the decision in the third UDRP action by Defendant Evergrande and against Plaintiff was made

17  without contractual authority or jurisdiction under the UDRP as there is no provision for re-filed

18  actions in the UDRP; (7) Declare that the decision in the third UDRP action by Defendant Evergrande

19  was made without contractual authority or jurisdiction under the UDRP where a petition was made to

20  the original panel to consolidate the cases and for the case to be placed before the original panel, but

21  the original panel was not provided with an opportunity to make the decision to consolidate under the

22  UDRP terms; (8) Declare that the use of the UDRP and the third UDRP decision was an improper

23  interpretation of the contractual rights of the Plaintiff under its registration agreement; (9) Declare that,

24  as a matter of contract, only a single UDRP proceeding may be filed against a domain holder; (10)

1   Declare that the UDRP, incorporated into the contract, does not provide a procedure for either party to

2   seek reconsideration of a decision by filing a second or third proceeding, but that the sole remedy after

3   losing the initial UDRP case is to proceed to Court or another form of litigation; (11) Enjoin Defendant

4   Evergrande from taking further actions as to the domain name without leave of this Court; (12) Grant

5   judgment for damages as a proximate result of the actions of Defendant Evergrande; and (13) Award

6   costs, fees, interest, and any other relief that may be granted.

Respectfully submitted,

Sergio Sanchez
c/o ABC Agents
PO Box 37635 Unit 10287
Philadelphia, PA 19101
s.sanchez@counsel.cr

PLAINTIFF

VERIFICATION

Plaintiff declares that the above is true and correct to the best of his knowledge and that the

averments are made under the penalty for perjury (28 USC 1746).

Sergio Sanchez

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may...

PRIORITY MAIL EXPRESS
POSTAGE REQUIRED

PRIORITY MAIL EXPRESS 1-DAY™

9470 1036 9930 0043 0443 01 0255 0000 0098 8101

usps.com
$25.50
US POSTAGE
Flat Rate Env

0625000000315

Mailed from 19101

03/26/2019

Scheduled Delivery Date: 03/27/19

0007

C028

MAILING SERVICES
ABC AGENTS PROCESS SERVERS AND FI
PO BOX 37635
SUITE 10287
PHILADELPHIA PA 19101-0635

WAIVER OF SIGNATURE
SCHEDULED DELIVERY 3:00 PM

SHIP
TO:
CLERK OF COURT
UNITED STATES DISTRICT COURT
700 STEWART ST
STE 2310
SEATTLE WA 98101-4442

CLERK U.S. DISTRICT COURT
AT SEATTLE
WESTERN DISTRICT OF WASHINGTON
BY

MAR 27 2019

RECEIVED FILED

USPS TRACKING #

9470 1036 9930 0043 0443 01

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International
destinations. See DMM and IMM at peusps.com for complete details.
† Money Back Guarantee for U.S. destinations only.

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL ★
EXPRESS™

PRESS FIRMLY TO SEAL

FASTEST SERVICE IN THE U.S.

USED INTERNATIONALLY,
CUSTOMS DECLARATION
L MAY BE REQUIRED.

EMS

July 2013   OD: 12.5 x 9.5





0001000006